Anthony REED *v.* STATE of Arkansas

CA CR 83-35 656 S.W.2d 249

Court of Appeals of Arkansas
Division II
Opinion delivered September 7, 1983

*William R. Simpson, Jr.,* Public Defender, and *Arthur L. Allen,* Deputy Public Defender, by: *Deborah R. Sallings,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Anthony Reed appeals from his conviction of the crimes of breaking and entering and aggravated robbery. He does not question the sufficiency of the evidence to sustain the conviction but only maintains that the trial court erred in not suppressing evidence of his confession. We find no error and affirm the conviction.

The crimes for which appellant was convicted were committed in December, 1981 when an intruder unlawfully

entered a dwelling occupied by Minnie Nunn and robbed her at knife point. These crimes and a number of similar ones committed in the same vicinity remained unsolved, until August 1982. At that time the appellant was arrested for another aggravated robbery which was committed against a Mrs. Caswell, and he confessed not only to that crime but to ten others, including those committed against Mrs. Nunn.

The appellant first contends that he was arrested without probable cause and that his confession was the fruit of an illegal arrest and therefore constitutionally infirm. We do not agree.

The appellant was arrested pursuant to a warrant issued by a judicial officer. Rule 7.1 (b), Arkansas Rules of Criminal Procedure (1977) authorizes a judicial officer to issue an arrest warrant if on the information presented it appears that there is reasonable cause to believe an offense has been committed and that the person to be arrested committed it. The principles by which a determination of the existence of sufficient probable cause to justify an arrest are discussed in *Sanders* v. *State,* 259 Ark. 329, 532 S.W.2d 752 (1976). The existence of probable cause must be determined upon the facts and circumstances either which the arresting officer has knowledge of at the moment of the arrest or which are made known to the magistrate at the time the warrant is issued. This determination is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men act. The reviewing court should follow a liberal rather than a strict course and all presumptions are favorable to the trial court's ruling on the legality of the arrest. The burden of demonstrating error rests upon the appellant.

Probable cause is only a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that the accused committed a felony but not tantamount to the quantum of proof required to support a conviction. It is clear from *Sanders* that our courts have committed themselves to the reasonable, common-sense approach to these determina-

tions and that arrests are to be appraised from the viewpoint of a prudent and cautious police officer at the time the arrest is made. It also declares that constitutional standards permit common-sense, honest judgment by police officers in their probable cause determinations. When the arrest is based upon a judicial officer's, rather than a police officer's, determination of probable cause, the reviewing court should not require evidence of more "judicially competent or persuasive character as would have justified an officer in acting on his own without a warrant," and should sustain a judicial determination as long as there is a "substantial basis" for the conclusion that the accused person has committed a felony. *Aguilar* v. *Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Jones* v. *United States*, 362 U.S. 257, 80 S.Ct. 725, 5 L.Ed.2d 697 (1960).

When we view the facts available to the police and judicial officer at the time the warrant was issued from the standpoint of common sense and with a pragmatic approach we find the evidence sufficient to constitute probable cause for appellant's initial arrest for the Caswell robbery.

After robbing Mrs. Caswell her assailant fled from her house, and she called her neighbor for assistance. Mr. Hite and his two sons immediately responded and although they saw no one either on or leaving Mrs. Caswell's premises, they observed an individual standing on the corner across from her house. He fled when they walked toward him. The Hites pursued him but quickly lost sight of him. More than a block from the Caswell house the Hites encountered two witnesses who stated that they had seen a person running past them in the same direction as the pursuers. Both of these persons knew the appellant and identified him as the person who had run past them. Acting on this information the police officers took a photo spread to Mrs. Caswell's residence. Although she was unable to make a positive identification of the appellant, she picked his picture from six others, stating that he "looked like" her attacker. This information was given to the judicial officer who issued the warrant for appellant's arrest.

It is to be remembered that probable cause deals with probabilities, not certainties or conclusions beyond a reasonable doubt. Here the fact that a felony had been committed at the Caswell home was clearly established. The Hites saw a man fleeing from the scene. Reasonable and prudent persons might easily conclude that the person seen fleeing the scene probably was the person who had committed the crime. Two witnesses identified the appellant as the person they saw a short distance away running down the street in the same direction as the Hites who were pursuing him. Although there was no proof that they were one and the same person, reasonable minds could conclude that the appellant probably was the same person as the one the Hites were pursuing. Although Mrs. Caswell's identification was not a positive one, her selection of his photograph from a line-up created an additional probability.

We would additionally note that we have seen no evidence that the incriminating statements were tainted by the arrest even if it was an illegal one. In *Sanders* v. *State, supra,* the court stated that persons arrested illegally may decide to confess as an act of free will unaffected by the initial illegality, and that the question of voluntariness must be answered in each case upon its particular facts. In *Wong Sun* v. *United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) the court stated:

> We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint?'

We find nothing in the record which suggests that appellant's several confessions were other than voluntary or that they were obtained by exploitation of his arrest. We find no merit in this contention.

After appellant's arrest he was immediately given the required Miranda warnings and acknowledged that he understood them. He did not invoke his right to remain silent and expressly waived his rights in writing. He stated that he did not desire the presence and advice of an attorney. He initially denied any participation in the Caswell robbery and attempted to establish an alibi. The officers were unable to verify that information and questioned him further. Within less than one hour appellant confessed not only to the Caswell robbery but to ten others in the same vicinity. As he was not aware of the names and addresses of his victims he went with the officers to the area and identified the houses in which he had committed the crimes. One of those houses was the home of Mrs. Nunn. He was then returned to the police station where the confessions were reduced to writing. All of this transpired within a three hour period.

It is not disputed that appellant was advised of his Miranda rights shortly after his arrest and was given no further warnings until after all of the confessions had been made and signed by him. He contends that his right to remain silent was violated because the officers interrogated him about other crimes without giving him the required warnings as to each specific crime. This argument was rejected in *Heard* v. *State,* 244 Ark. 44, 424 S.W.2d 79 (1968).

Affirmed.

We agree: MAYFIELD and CORBIN, JJ.