Mark W. HINES *v.* STATE of Arkansas

CR 85-218                                          709 S.W.2d 65

Supreme Court of Arkansas
Opinion delivered May 12, 1986

*John W. Settle*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. On March 1, 1984 the body of Prince Scott was found in a pool of blood on the floor of a Ft. Smith pawnshop where he worked. He had been shot in the neck with a shotgun. The cash register drawer was missing, as well as a pistol from an open display case. Currency was scattered near the body.

In what then seemed an unrelated matter, Mrs. Mary Clark contacted the Ft. Smith police on May 23 complaining of a threat on her life. She reported that her son-in-law, Alan Hines, her daughter, Pamela Hines, and Alan's brother, Mark, had poured formaldehyde on furniture at her apartment. She was referred to the prosecuting attorney, Mr. Ron Fields. Fields interviewed Mrs. Clark, and satisfied her fears were genuine, he made inquiries about the capability of formaldehyde to cause death, if inhaled sufficiently. Mrs. Clark signed a blank warrant for the arrest of Alan Hines, Pamela Hines and Mark Hines for criminal mischief. Because family disputes sometimes resolve themselves and because he recognized Mark Hines's name in connection with the Scott murder, Fields concluded that caution was advised and he referred Mrs. Clark to the police for further investigation. At some point, Officer Rickman was sent to Mrs. Clark's apartment and observed formaldehyde on the furnishings. On Sunday, May 27, Mrs. Clark was interviewed by Sgt. Harlan Sweeten and Ron Fields later signed an information charging the Hineses with criminal mischief. On May 28 warrants of arrest were issued by Municipal Judge Harry C. Foltz.

On Monday the warrants were executed and only Pamela Hines was found. She was arrested and brought to police headquarters. She told the officers Mark Hines had told her he killed Prince Scott. A short time later Alan and Mark Hines appeared voluntarily at police headquarters where the Miranda warnings were given. Mark Hines was questioned simultaneously about the formaldehyde incident and the homicide, and without urging he gave a detailed statement to the police in which he admitted shooting Prince Scott at the pawnshop. He said Scott objected to his dating his daughter and had threatened to kill him if he continued. Hines described instances when Scott had tried to

assault him. Hines told of coming to the pawnshop on March 1 and when Scott drew a pistol Hines said he shot him with a 20 gauge shotgun. Hines grabbed the pistol and blood spattered cash drawer and left.

Mark Hines was charged with the murder of Prince Scott, convicted and sentenced to thirty-five years imprisonment. On appeal he argues the trial court erred in denying his motion to suppress his statement. We affirm.

## Probable Cause

Mark Hines insists there was no probable cause to arrest him for criminal mischief and that his arrest was a mere pretext so he could be questioned on the more serious charge of murder. It follows, he argues, that if the arrest was unlawful then his statement should have been excluded as being "fruit from the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1965). We disagree that Mark Hines's arrest was unlawful, or that the misdemeanor charge was simply a pretext.

Mary Clark testified at the suppression hearing that she and her lawyer had gone to the office of the prosecuting attorney. She told him Alan Hines, Pam and Mark were at her apartment and put formaldehyde on a couch, chair, ottoman and a loveseat while she was asleep in a bedroom. Alan, she said, later admitted having done it and said he "wished it had killed me." Mark and Pam never admitted to any involvement. She said the formaldehyde belonged to Mark Hines. She signed blank warrants of arrest against all three individually, which were subsequently completed, charging each with criminal mischief. On May 28, the prosecutor executed a verified information and the warrants of arrest were signed by Judge Foltz.

We have examined the record carefully and are satisfied that reasonable cause, as defined by the Supreme Court and our own cases, existed for the issuance of the warrant for Mark Hines's arrest. A.R.Cr.P. Rule 7. Probable cause is said to be only a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that a crime has been committed by the person suspected. *Coble v. State*, 274 Ark. 134, 624 S.W.2d 421 (1981). Probable cause does not require the quantum of proof necessary

to support a conviction, and arrests are to be appraised from the viewpoint of a prudent and cautious police officer at the time the arrest is made. *Reed v. State*, 9 Ark. App. 164, 656 S.W.2d 249 (1983).

On appeal, all presumptions are favorable to the trial court's ruling on the legality of the arrest and the burden is on the appellant to demonstrate error. *Williams v. State*, 258 Ark. 207, 523 S.W.2d 377 (1975). Determination of probable cause is said to be based on factual and practical considerations of everyday life upon which reasonable and prudent men, rather than legal technicians, act. *Draper v. United States*, 358 U.S. 307 (1959); *Brinegar v. United States*, 338 U.S. 160 (1949). Thus, a non-technical approach has been said to afford the best compromise for accommodating the competing interests of the individual and of society, so that law enforcement officers will not be unduly hampered, nor law abiding citizens left to the mercy of the whim and caprice of overzealous police officers. *Beck v. Ohio*, 379 U.S. 89 (1964). In making the determination of probable cause the reviewing court should be liberal rather than strict. *Sanders v. State*, 259 Ark. 329, 532 S.W.2d 752 (1976).

In that light, we believe the record confirms the ruling of the trial court with respect to probable cause. There was some dispute between Pamela and Alan Hines, on the one hand, and Mrs. Clark, on the other, involving the couch; Alan, Mark and Pam were together at the Clark apartment at the time of the incident; the relational ties between the three individuals, the fact that Alan Hines admitted his own involvement, and the fact that the formaldehyde belonged to Mark Hines are circumstantial links to the crime. Clearly the two brothers were close, as Mark went first to Alan's apartment after shooting Scott, and Mark wanted Alan at his side when he gave the statement to the police. It is not unreasonable to assume if all three were at the apartment when the act occurred, an act one of them admits to, and the formaldehyde used to accomplish the crime was Mark's, that Mark Hines was involved.

Appellant points out that while Mrs. Clark was adamant in her accusations against Alan Hines, she was somewhat equivocal as to Mark and Pamela. But she admitted she wanted all three arrested if they were involved and according to Sgt.

Sweeten, she blamed all three. These discrepancies were for the trial court—the abiding fact is she signed warrants against all three and her testimony at the suppression hearing must be judged in light of its having been a year later, and long after she had dropped charges against all three. We think the trial judge was right to rule as he did.

### Pretextual Arrest

Coupled with the probable cause argument is the contention that Mark Hines's arrest for criminal mischief was merely a pretext to enable the police officers to question him about the murder of Prince Scott. We disagree.

Pretextual arrests are not new to the law. *United States* v. *Lefkowitz*, 285 U.S. 452 (1932). We examined the law recently in *Richardson* v. *State*, 288 Ark. 407, 706 S.W.2d 363 (1986), where we found an arrest for public drunkenness to have been a pretext for the furtherance of a murder investigation. This case is readily distinguishable. In *Richardson*, pretext was demonstrated in that a search for evidence of murder had no relation to the nature and purpose of the arrest for public drunkenness, and by the fact that even before Richardson was charged with public drunkenness the officers testified he would not have been permitted to leave because he was a suspect in the murder investigation.

Claims of pretextual arrest raise a unique problem in the law—deciding whether an ulterior motive prompted an arrest which otherwise would not have occurred. Confusion can be avoided by applying a "but for" approach, that is, would the arrest not have occurred but for the other, typically the more serious, crime. Where the police have a dual motive in making an arrest, what might be termed the covert motive is not tainted by the overt motive, even though the covert motive may be dominant, so long as the arrest would have been carried out had the covert motive been absent. Professor La Fave, Criminal Procedure, § 3.1(d), p. 144, describes this as the correct result. Because the action would have been taken in any event, he states, "[T]here is no conduct which ought to have been deterred and, thus, no reason to bring the Fourth Amendment exclusionary rule into play." *Abel* v. *United States*, 362 U.S. 217 (1966). See *People* v. *Guido*, 95 Misc.2d 47, 407 NYS 2130 (1978).

We find no pretext here because the testimony convinces us the arrest on criminal mischief would have occurred in any event. Nor is this a case of the police making an arrest on a contrivance to gain evidence not otherwise available to them.[1] Mark Hines was arrested on the complaint of a private citizen, Mary Clark, and there was, as we have seen, a reasonable circumstantial basis for the charge of criminal mischief. The police did not seek out Mrs. Clark, nor encourage her to complain against Mark Hines and the other two. Indeed, she needed no prompting. The evident fact is Mrs. Clark was the instigator of the arrest, not the police. The police and prosecutor, if anything, were cautious in their dealings with her. It was she who pursued the matter, calling repeatedly on Sunday and Monday to see if any action had been taken. Finally, it must be noted the charge of criminal mischief was made on the sworn statement of the prosecuting attorney and the arrest authorized by a warrant signed by a judicial officer.

Appellant makes much of the fact that it was extraordinary for Judge Foltz to issue warrants of arrest. But the argument goes no farther, and offers no conclusion. Granted, it may have been a rare occurrence, but having said that, there is little left to say, except to observe that the warrants were issued on Memorial Day and Judge Foltz may have been the only judge available. His authority to issue warrants is not questioned and we cannot presume some impropriety on the bare allegation the procedure was unusual.

We find nothing improper about these procedures, nor anything to suggest the in-custodial statement was coerced. If this statement were suppressed the case would be a classic example of the unfortunate extreme to which the exclusionary rule has been extended.

The judgment is affirmed.

PURTLE, J., not participating.

---

[1] For example see: *State* v. *Haven*, 269 N.W.2d 849 (Minn. 1978); *United States* v. *Carriger*, 541 F.2d 545 (6th Cir. 1976); *Amador-Gonzales* v. *United States*, 391 F.2d 308 (5th Cir. 1968); *McKnight* v.*United States*, 183 F.2d 977 (App. D.C. 1950).