STATE of Arkansas *v.* Kenneth Andrew SULLIVAN

CR 99-1140                                    11 S.W.3d 526

Supreme Court of Arkansas
Opinion delivered February 10, 2000
[Supplemental opinion on denial of rehearing issued May 18, 2000.* ]

---

* GLAZE, IMBER, and SMITH, JJ., would grant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellant.

*F.N. "Buddy" Troxell*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The State brings this interlocutory appeal from the trial court's granting of appellee's motion to suppress evidence found in his vehicle after an officer observed him speeding. Appellee was approached by a Conway police officer, Joe Taylor, for allegedly traveling forty miles per hour in a thirty-five mile-per-hour zone on Highway 65 in Conway. Although Officer Taylor did not use his "blue lights" to require appellee to stop, appellee pulled into a service station and was then informed by Officer Taylor of the reason for the contact.

Appellee was requested by Officer Taylor to produce registration and proof of insurance. When appellee, a now–disabled, previously self-employed roofer, opened his vehicle door to locate the documents requested, Officer Taylor noticed a rusted roofing hatchet that was corroding into the carpet of the vehicle. Appellee was unable to locate his vehicle registration and proof of insurance. He was then arrested for speeding, having no vehicle registration and no proof of insurance, and carrying a weapon (the roofing hatchet), as well as having an improper tint on his windshield. Officer Taylor further deemed appellee's vehicle to be unsafe because his speedometer was not working properly.

After another officer arrived and placed appellee in the back of his police unit, Officer Taylor began an inventory search of appellee's automobile. Officer Taylor testified that under the armrest, he found a black bag with what appeared to be methamphetamine inside it. The bag, he claims, contained a Ziploc-type bag with ten individually-wrapped bags of the substance, twenty-seven corners of plastic bags, a small plastic container with suspected marijuana, another Ziploc-type bag with bag corners inside of it, and a plastic container with two bags of suspected methamphetamine. Officer Taylor also stated that a zippered pocket of the same black tote bag contained two bags of suspected methamphetamine, a plastic tube with white powdery residue in it, a wood-handled knife with white powdery residue on the ends, and a red metal plate and a purple plastic straw. Appellee was then charged with the following offenses: possession of methamphetamine with intent to deliver; attempt to manufacture methamphetamine; possession of drug paraphernalia; unlawful possession of a weapon, the roofing hatchet; and speeding.

He was not charged with having no proof of insurance or vehicle registration.

Appellee moved to suppress evidence seized from his vehicle on the basis that the stop was a pretext to conduct a search. Upon the testimony of the sole witness at the suppression hearing, who was Officer Joe Taylor, as well as arguments of counsel, the trial court deliberated overnight and then granted appellee's motion to suppress, from which the State now brings this appeal. For its only point on appeal, the State asserts that the trial court erred in granting appellee's motion to suppress evidence found in his vehicle. We disagree with the State and affirm the trial court.

■ This Court, upon review of a trial court's ruling on a motion to suppress, makes an independent determination based on the totality of the circumstances and reverses only if the trial court's ruling is against the preponderance of the evidence. *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998). The issue before this Court is whether the search of appellee's vehicle was justified, either as an inventory search or as a search incident to arrest. We hold that it was not.

In the instant case, Officer Taylor was the sole witness who testified at the hearing on appellee's motion to suppress. Although he testified on direct examination that what he conducted was merely an inventory search as dictated by policy and not a search conducted after a traffic stop predicated on suspicions he had of the appellee's involvement in drug activity, he did admit on cross-examination that he had been assigned to the narcotics section and that said section had intelligence on the appellee of which Officer Taylor was aware. Appellee contends that the very facts and circumstances surrounding the arrest itself proves that it was pretextual in nature, in that it was made solely for the purpose of searching the appellee's vehicle for controlled substances, and that, as a result, he is entitled to an order suppressing any and all evidence seized from his vehicle. Appellee asserts that the arresting officer had no reasonable basis to believe that the roofing hatchet was to be used as a weapon.

■ We have held that "pretext" is a matter of the arresting officer's intent, which must be determined by the circumstances of the arrest. *Brenk v. State*, 311 Ark. 570, 847 S.W.2d 1 (1993). We held in *Hines v. State*, 289 Ark. 50, 709 S.W.2d 65 (1986), and the Court of Appeals followed in *Miller v. State*, 44 Ark. App. 112, 114, 868 S.W.2d 510 (1993):

The Supreme Court has specifically held that "an arrest may not be used as a pretext to search for evidence." *United States v. Lefkowitz*, 285 U.S. 452 (1932). ...

....

Claims of pretextual arrest raise a unique problem in law — deciding whether an ulterior motive prompted an arrest which otherwise would not have occurred. Confusion can be avoided by applying a "but for" approach, that is, would the arrest not have occurred but for the other, typically, the more serious crime. Where the police have a dual motive in making an arrest, what might be termed the covert motive may be dominant, so long as the arrest would have been carried out had the covert motive been absent. ...

■ The question then becomes whether appellee would have been *arrested* simply for traveling forty miles per hour in a thirty-five mile-per-hour zone and possessing a roofing hatchet that had clearly been in his vehicle for quite a long time, given that it was corroding into the carpet. We find that to be doubtful. His vehicle may have been impounded due to his failure to provide proof of insurance and registration. However, appellee was never *charged* with having no proof of insurance or vehicle registration. Further, the trial court, when assessing the credibility of Officer Taylor (the sole witness at the hearing), the totality of the circumstances, and the applicable law, agreed with appellee that the search and seizure was pretextual and should be suppressed. Clearly, a review of the applicable law illustrates that the issue of pretext necessarily turns on the facts in a given case, and given our standard of review in these cases, we cannot say that the trial court's ruling was against the preponderance of the evidence:

Affirmed.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING MAY 18, 2000

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellant.

No response.

WH. "DUB" ARNOLD, Chief Justice. The State has petitioned for rehearing in this case, contending that this court's opinion delivered on February 10, 2000, *State v. Sullivan*, 340 Ark. 315, 11 S.W.3d 526 (2000), contained a significant error of law. The State argues that this court's analysis of the present case using the concept of "pretext" is contrary to the United States Supreme Court's opinion in *Whren v. United States*, 517 U.S. 806 (1996). The State presents us with the *Whren* case for the first time on rehearing and argues that under *Whren*, a police officer may arrest someone for a minor traffic violation, knowing full well that the real reason for the arrest is to enable a search of the vehicle for a suspected crime.

We do not read *Whren* as going as far as the State would have it. In *Whren*, the police officers observed youthful occupants at night in a vehicle with temporary license plates. The youths were acting suspiciously in a high crime area. When the vehicle did a U-turn and sped off at an unreasonable speed, the police officers gave chase and stopped the vehicle. One of the police officers

approached the vehicle and saw two bags of crack cocaine in the driver's hands.

These facts are very different from those in the case before us. Here, the police officer stopped Sullivan for speeding, arrested him primarily because he had a roofing hatchet on the floor of his vehicle which had rusted into the carpet, and then conducted an inventory search following the arrest. As the trial court found in its ruling:

> [F]ollowing our hearing yesterday, I have gone over the testimony and looked at what I believe to be the law in that case, and it's going to be my decision in this particular instance that based on the testimony, specifically that the officer testified that he stopped the car based on a charge of suspicion of speeding -- which I have no problem with the stop. I think that was ... there was radar. I don't have any problem with that.

> He testified that once he got him stopped, he recognized him as someone that he had seen intelligence on regarding narcotics, and he -- rather than write citations, he physically arrested him. And the weapons charge, I think, was added to that. And I don't believe that in this particular instance that the -- that that was appropriate, and I'm going to grant the defendant's motion to suppress the evidence seized as a result of that search.

The State argues that under *Whren*, the Supreme Court has determined that the ulterior motives of police officers are irrelevant so long as there is probable cause for the traffic stop. Admittedly, the decision in *Whren* is broadly written, but much of it is *dicta*. Nevertheless, we do not interpret *Whren* as blanket authority for pretextual arrests for purposes of a search in all cases. Rather, the reasonableness of the arrest and search must be governed by the facts of each case. For example, we do not believe that *Whren* goes so far as to sanction conduct where a police officer can trail a targeted vehicle with a driver merely suspected of criminal activity, wait for the driver to exceed the speed limit by one mile per hour, arrest the driver for speeding, and conduct a full-blown inventory search of the vehicle with impunity.

Several jurisdictions, after the *Whren* decision, have refused to give total authority to law enforcement for pretextual arrests and the resulting searches, either because of state constitutions or

because the search and seizure was unreasonable. *See, e.g., State v. Ladson*, 979 P.2d 833 (Wash. 1999); *State v. Varnado* , 582 N.W.2d 886 (Minn. 1998); *People v. Dickson* , 690 N.Y. Sup. Ct. 2d 390, 180 Misc. 2d 113 (1998); *State v. Gonzalez-Gutierrez*, 927 P. 2d 776 (Ariz. 1996). Further, one jurisdiction has questioned the ultimate absurdity of whether *Whren* was meant to sanction arrests and searches incident to a parking violation. *See State v. Holmes,* 569 N.W.2d 181 (Minn. 1997).

This court has cited *Whren* in two cases. *See Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998); *Burris v. State* 330 Ark. 66, 954 S.W.2d 209 (1997). Neither case dealt with the issue of pretextual arrests but rather cited *Whren* for the proposition that probable cause of a traffic violation is all that is required for a police officer to make a stop. In fact, in *Travis*, we specifically noted that the argument of a pretextual arrest had not been made.

■ Here, the trial court found that the arrest was pretextual and made for the purpose of searching Sullivan's vehicle for evidence of a crime. Again, we do not believe that *Whren* disallows this. Moreover, even if we were to interpret *Whren* to give full rein to law enforcement to effect pretextual arrests for traffic violations, there is nothing that prevents this court from interpreting the U.S. Constitution more broadly than the United States Supreme Court, which has the effect of providing more rights. We arguably have done so with our Criminal Rules that provide more stringent requirements for nighttime searches than Court decisions. *See* Ark. R. Crim. P. 13.2(c); *Garner v. State*, 307 Ark. 353, 820 S.W.2d 446 (1991).

■ In sum, we will not give *carte blanche* approval for all pretextual arrests for traffic violations, as the State would have us do. We draw a clear distinction between arresting a person with crack cocaine in his hands as was the case in *Whren* and effecting a pretextual arrest for purposes of a search, such as we have in the instant case. Surely that flies in the face of reasonableness, which is the essence of the Fourth Amendment. *See State v. Holmes, supra.* We will decide the reasonableness of the arrest and search on a case-by-case basis, as the *Whren* decision makes clear. For these reasons, we deny the State's petition for rehearing.

Denied.

CORBIN, BROWN, and THORNTON, JJ., join.

GLAZE, IMBER, and SMITH, JJ., would grant rehearing.

TOM GLAZE, Justice, dissenting. The State petitioned for rehearing in this case, arguing that our decision rendered on February 10, 2000, *State v. Sullivan*, 340 Ark. 315, 11 S.W.3d 526 (2000), contained a significant error of law in failing to mention *Whren v. United States*, 517 U.S. 806 (1996). It is true that our opinion did not discuss *Whren*, but only because that case was neither cited nor argued to this court. I agree with the majority court that the *Whren* decision is significant to our reaching a correct holding in the present case; thus, our court considers it now.[1]

As our court set out in its original opinion, the evidence was indisputable that police officer Joe Taylor made a proper stop of Kenneth Sullivan's car because Sullivan was speeding. Sullivan also had no insurance, vehicle registration, or functional speedometer, and his car windows were improperly tinted. The officer additionally observed a hatchet on the driver's floorboard. The officer advised Sullivan that he was being placed under arrest for these infractions and for driving an unsafe car. He put Sullivan in the back of another officer's car and began inventorying Sullivan's vehicle. In the search, the officer found methamphetamine and marijuana. In making the inventory search, Taylor testified that he followed his department's policy and procedural manual. In these circumstances, Officer Taylor had probable cause to believe Sullivan committed a traffic offense at the time of the stop. That valid stop resulted in the discovery of other violations of the law that permitted Taylor to arrest Sullivan and inventory his car, where the officer found illegal drugs.

Recently, in *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998), our court upheld the stop of a defendant's truck for committing a traffic offense — failing to display expiration-date stickers. After the stop, the officer discovered that the driver of the truck had a suspended driver's license, and the passenger, defendant, was a felon who also had no valid license. The officer had the truck towed.

---

[1] The State also failed to cite or argue Arkansas cases *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998), or *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997). However, the *Travis*, *Burris*, and *Whren* cases are relevant to the search, seizure, and arrest issues raised at trial and on appeal and require this court to consider them

When the officer later opened the door of the truck, he found a rifle which led to the defendant's arrest for being a felon in possession of a firearm. At trial, the defendant argued that no probable cause existed for the officer to stop his truck because the officer wrongly believed the Texas license plate was required to display an expiration sticker. Citing *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997), and *Whren v. United States*, 517 U.S. 806 (1996), the *Travis* court rejected the defendant's argument and upheld the search of defendant's truck, holding that it is well settled that an officer may stop and detain a motorist where the officer has probable cause to believe a traffic violation had occurred. Furthermore, in reaching its decision, the *Travis* court repeated the rule in *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997), that, *in assessing the existence of probable cause, our review is liberal rather than strict*. To the same effect, *see Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997). In the present case, once the officer made a valid stop and arrested Sullivan for the numerous traffic violations, including driving an unsafe vehicle, the officer had the authority to perform an inventory of Sullivan's vehicle.

It has been suggested that the State's argument on rehearing is that a police officer may arrest someone for a minor traffic violation, knowing full well that the real reason for the arrest is to enable a search of the vehicle for a suspected crime. To the contrary, the State set out its contention as follows:

> The relevant inquiry, thus, is not whether the officer had an ulterior motive for stopping the vehicle, but whether the officer had probable cause to believe that the defendant was committing a traffic offense at the time of the initial stop. *Travis, supra; Burris, supra*. Based on his radar detection of [Sullivan's] speed, the officer here *unquestionably had probable cause to stop [Sullivan]. This Court, thus, applied the wrong standard when it decided this case based on its view that the officer stopped appellee based on an ulterior motive. Even if the officer had an ulterior motive, which the State does not admit, it is not to be taken into account by this Court, according to Whren, because the stop was unquestionably proper. The Court should grant rehearing to consider this case in the light of Whren, Travis, and Burris.*

It has been further suggested that Officer Taylor had arrested Sullivan primarily because he had a roofing hatchet in the floor of his vehicle; however, even if the trial court believed this to be true, Taylor still had probable cause to detain and arrest Sullivan for the

numerous traffic offenses he had committed. It appears that the judge got off track by injecting his personal view as to whether a hatchet could be a weapon for which he could be arrested for possession. The judge mused, "I've got a hammer under the seat of my car today. Am I subject to being arrested and taken physically into custody because I have a hammer?" With all due respect to the trial judge, the issue, as stated above, is not whether the hatchet, alone, was cause for an arrest after the stop, but whether Sullivan had committed traffic violations in Officer Taylor's presence. Unquestionably, such violations occurred.

In sum, because Sullivan was speeding, had no insurance or vehicle registration, a non-working speedometer, illegally tinted windows, and an unsafe vehicle, the officer had the right to place (and did place) Sullivan under arrest. Sullivan's arrest was valid under Ark. R. Crim. P. 4.1(a)(iii) (1999), which states that "a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed . . . *any* violation of the law in the officer's presence." (Emphasis added.) Pursuant to this rule, a law enforcement officer is authorized to arrest a person for minor traffic violations witnessed by the officer, such as speeding. *See State v. Earl*, 333 Ark. 489, 970 S.W.2d 789 (1998); *Hazelwood v. State*, 328 Ark. 602, 945 S.W.2d 365 (1997). The officer's arrest of Sullivan was, therefore, valid. These violations being found also allowed Taylor to make an inventory search that quickly led to the discovery of illegal drugs. *See* Ark. R. Crim. P. 12.6(b) (1999) (a vehicle impounded in consequence of any arrest, or retained in official custody for other cause, may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents). The trial court did not find, nor did Sullivan prove, that the inventory search was conducted in bad faith for the sole purpose of collecting evidence.

The majority opinion on rehearing hypothecates that the Supreme Court's *Whren* case does not go so far as to sanction conduct where a police can trail a targeted vehicle with a driver merely suspected of criminal activity, wait for the driver to exceed the speed limit by one mile per hour, arrest the driver for speeding, and conduct a full-blown inventory search of the vehicle with impunity. Of course, I agree *Whren* does not allow such a stop and search, but those are not the facts before this court. It is uncontro-

verted that, at the time of the stop, Officer Taylor did not know the driver was Sullivan. Once again, even the trial court found no pretextual stop, and ruled the stop valid. Under the circumstances of this case, Sullivan's criminal record simply cannot be utilized to his advantage at the time of his stop and arrest.

The majority court validates the stop in this case, but finds Sullivan's arrest pretextual. Again, Sullivan's violation of numerous traffic offenses justified his arrest, and I am unaware of any rule or law that requires an officer merely to issue citations in a traffic stop where numerous violations occurred. Furthermore, I find nothing in the record that the officer could not arrest the violator. While it is true that Officer Taylor, after the stop, recognized Sullivan as a person who had been involved in illegal drugs, surely this fact should not be employed by our court to hold Sullivan's arrest invalid. Labeling Sullivan's arrest illegal when so many other violations justified it fails to comport with the law.

In fact, Supreme Court jurisprudence dictates a contrary result. In *United States v. Villamonte-Marquez*, 462 U.S. 579 (1983), the court dismissed the argument that an ulterior motive might strip law enforcement officers of their legal justification to undertake a search. The Court likewise held that a traffic-violation arrest would not be rendered invalid by the fact that it was "a mere pretext for a narcotics search." *United States v. Robinson*, 414 U.S. 218 (1973). Summarizing these and other cases in *Whren*, Justice Scalia wrote, "[w]e think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813.

For the above reasons, I would hold that the trial court erred and would overturn its ruling. The majority court's failure to do so will generate considerable confusion among the rank and file of law enforcement, the bench, and the bar alike. Its decision is unquestionably a departure from search and seizure law as the Supreme Court has heretofore defined it.

IMBER and SMITH, JJ., join this dissenting opinion.