Mack E. STEPHENS *v.* STATE of Arkansas

CR 98-1073                                    28 S.W.3d 260

Supreme Court of Arkansas
Opinion delivered September 28, 2000

*Bowden Law Firm*, by: *David O. Bowden*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Mack Stephens was convicted of possession of a controlled substance (methamphetamine) with intent to deliver and possession of drug paraphernalia; he was sentenced to twenty-three years in prison and fined $10,000. On appeal, he argues that the trial court improperly denied his motion to suppress evidence seized from his person and car after his arrest.

On July 12, 1996, Deputy Lance Freeman of the Van Buren County Sheriff's Department was visiting with the owners of the Foothills Grocery in Alread. As he was inside the store, he saw a tan Oldsmobile begin to enter the parking lot, but the car then paused for a second and sped away. Deputy Freeman recognized the passenger, Terry Rudder (whom the policeman knew to be involved in drugs), but he did not know the driver. A minute or so later, the car returned to the store, and the driver was alone. Because this struck Deputy Freeman as suspicious, he asked the store owner if he knew who the driver was; the owner responded that it was Mack Stephens.

Deputy Freeman then called the Sheriff's Office and asked the dispatcher to QNF (query name file) the name Mack Stephens in the Arkansas Crime Information Computer (ACIC). The search came back showing that there was a 1994 warrant out for a Mack Stephens out of Faulkner County on a hot check charge. The deputy went outside and asked Stephens for his driver's license, which showed the name Mack Stephens. Freeman told Stephens that there was a warrant out for him, and he placed Stephens under arrest.

Freeman then had Stephens turn out his pockets, as part of a search incident to the arrest. Stephens set out a red zipper pouch that contained a number of small baggies of white powder, a vial with white powder, a glass vial and measuring device with white powder, two straws, two razor blades, a pipe, a small spoon, three filtering screens, and a Royal Crown bag containing $2,229.35 in

cash. A search of the car also turned up a Dial-a-Page beeper, a list of names, and a list of telephone numbers.

After being charged with possession with intent to deliver methamphetamine and possession of drug paraphernalia, Stephens moved to suppress the evidence found during this search. He contended that his arrest was "pretextual," but the trial judge disagreed and ruled that Freeman had reason to believe Mack Stephens had a warrant out for his arrest (although it was later learned that the warrant was for Stephens's son, whose name was also Mack Stephens), and that there was no evidence of any improper motive, bad faith, or pretext on the officer's part in approaching and asking for identification or in placing Stephens under arrest based on the outstanding warrant.

A jury found Stephens guilty of the drug charges, and he now appeals, raising the following two points: 1) his arrest was not based upon reasonable suspicion or probable cause, but was instead premised on the fact that he had been seen with Rudder, a person known to have a history of involvement with drugs; and 2) the trial court erred in allowing the list of names and telephone numbers seized from his car to be entered into evidence. We find no merit to either of these contentions and affirm.

■ Stephens first asserts that Deputy Freeman could not articulate a reasonable suspicion or probable cause to permit him to access the ACIC files, and as such, the information from the ACIC search should have been deemed illegally obtained and therefore suppressed. However, this was not his argument below. Stephens argued to the trial court that the evidence should have been suppressed because the arrest was pretextual. There, he contended that Deputy Freeman only requested the QNF because of a suspicion based on Stephens's association with Rudder. However, he never suggested or argued below that the officer acted improperly in learning about and acting on the arrest warrant.[1] We have long held that issues must be presented to the trial court in order to

---

[1] In his reply, Stephens first makes mention that the warrant was stale or perhaps was outside the statute of limitation. However, Stephens still offers no convincing argument or citation of authority concerning the warrant's invalidity, and we have said on numerous occasions that we do not consider arguments unsupported by convincing authority, unless it is apparent without further research that they are well taken. *See McGhee v. State*, 334 Ark. 543, 975 S.W.2d 834 (1998).

preserve them for appeal. *Rogers v. State*, 66 Ark. 283, 989 S.W.2d 568 (1999) (citing *Strickland v. State*, 331 Ark. 402, 962 S.W.2d 769 (1998)). We will not address an argument that was not made to the trial court as part of a motion to suppress. *Rhoades v. State*, 319 Ark. 45, 49-50, 888 S.W.2d 654 (1994).

In addition, Stephens argues that the fruits of the search were inadmissible because Freeman had no information except Stephens's association with Rudder as a basis for the arrest. He relies on *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998), and *State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997), for the proposition that an officer must have something more than a bare suspicion of criminal activity before approaching an individual. However, both *Stewart* and *McFadden* involved *warrantless* stops. Stephens's argument ignores the fact that Deputy Freeman did not approach him until after Freeman learned of the outstanding arrest warrant.

■ This case is essentially controlled by our rules of criminal procedure — specifically, Ark. R. Crim. P. 4.2 and 4.3. Under Ark. R. Crim. P. 4.2, any law enforcement officer may arrest a person pursuant to a warrant in any county in the state. Rule 4.3 provides that the officer need not have the warrant in his possession at the time of the arrest, but if the officer does not have it, the officer must inform the accused of the fact that the warrant has been issued. Deputy Freeman complied with both of these rules. Again, Stephens emphasizes the fact that Freeman's suspicions were based only on "guilt by association"; however, even if Deputy Freeman suspected Stephens's involvement with drugs when he called in the QNF, an "otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." *Mings v. State*, 318 Ark. 201, 210, 884 S.W.2d 596 (1994) (citing *Untied States v. Cummins*, 920 F.2d 498 (8th Cir. 1990)).

■ We have held that pretext is a matter of the arresting officer's intent, which must be determined by the circumstances of the arrest. *Mings*, 318 Ark. at 210, 884 S.W.2d at 602 (citing *Ray v. State*, 304 Ark. 489, 495, 803 S.W.2d 894, 897, *cert. denied*, 501 U.S. 1222 (1991)). An ulterior motive does not in itself render an arrest pretextual when there is a valid overt reason to make the arrest. *Id.* (citing *Hines v. State*, 289 Ark. 50, 55, 709 S.W.2d 65, 68 (1986)). The reasoning is that the arrest for the overt violation would have

taken place in any event; thus there is no reason to bring the Fourth Amendment and the exclusionary doctrine into play. *Id.* Here, Deputy Freeman had an outstanding arrest warrant naming "Mack Stephens," and because he had authority under Ark. R. Crim. P. 2.2.[2] to approach and arrest Stephens,[3] it cannot be said that the arrest was pretextual.

For his second point on appeal, Stephens argues that the list of names and telephone numbers seized pursuant to his arrest were not provided to him in discovery. He contends that this prejudiced his ability to put on his defense (which was that he possessed the large amount of methamphetamine for personal possession and not with the intent to distribute it) because the names on the list were "not unknown to law enforcement," and the implication was that the list was a "customer list." Stephens urges that the trial court should have sustained his objection or granted his motion for mistrial when the State introduced these lists.

The list in question was removed from Stephens's possession and introduced without objection at the hearing on the motion to suppress, which was held five months before trial. At the trial, the list was again admitted, along with the other items seized, without objection. Stephens's attorney did not object to the introduction of the list in any way until the prosecutor began to ask Deputy Freeman if he knew any of the names on the list. Although Stephens states in his brief that he made a motion for mistrial and "for instruction," neither the transcript nor the abstract reflects that such a motion was made.

■ The law is clear that any objections either to the introduction of evidence or to purported discovery violations must be made at the first opportunity. *Hinkston v. State*, 340 Ark. 530, 538, 10 S.W.3d 906 (2000). The first opportunity in this case was at the suppression hearing; another opportunity arose at trial when the prosecution introduced the list along with the other items seized.

---

[2] This rule provides that "[a] law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation . . . of crime."

[3] Stephens did not attack the validity of the warrant, but even if he had challenged it, the United States Supreme Court has indicated that a law enforcement officer "executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker v. McCollan*, 443 U.S. 137, 145-56 (1979)

Stephens, however, did not object to the evidence until Deputy Freeman's testimony on redirect examination.

▪▪ In any event, Stephens had known of the list at least for at least the five months following the suppression hearing. He had asked for documentary evidence in a discovery motion, and he does not claim that he was denied access to the list. The State cannot be held responsible for Stephens's failure to investigate the evidence, nor was Stephens entitled to rely on discovery alone as a substitute for thorough investigation. *See Rychtarik v. State*, 334 Ark. 492, 501, 976 S.W.2d 374 (1998). In addition, the State was not obligated to tell Stephens what it was planning on having Deputy Freeman testify to with respect to the names on the list. *See Munson v. State*, 331 Ark. 41, 51, 959 S.W.2d 391 (1998); *Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994) ("the State has no obligation to discover to defense counsel the substance of the anticipated testimony by State's witnesses"). We therefore conclude that Stephens's argument on this point is meritless.

Finally, Stephens raises a novel argument in his reply brief, urging that this court has applied an improper standard of review in cases involving motions to suppress.[4] For this proposition, he cites *Ornelas v. United States*, 517 U.S. 690 (1996), which held that "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Ornelas*, 517 U.S. at 699. The Court further stated that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

▪ Our court has historically reviewed trial courts' denials of motions to suppress using a "clearly erroneous" standard. Our most recent pronouncement of this standard came down this past June, in *Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000), where we expressed the standard as follows:

> When this court reviews a trial court's ruling on a motion to suppress, we review the evidence in the light most favorable to the State and make an independent determination based upon the totality of the circumstances. *Bangs v. State*, 338 Ark. 515, 998

---

[4] This appeal was originally filed in the Court of Appeals, but was certified to us on the basis of this perceived conflict between *Ornelas* and our standard of review.

S.W.2d 738 (1999). Further, this court will only reverse a trial court's ruling on a motion to suppress if the ruling was clearly erroneous. *Id.*

*Gilbert*, 341 Ark. at 605.

■ However, while Stephens's argument brings up an interesting legal question, we decline to address it at this time for a number of reasons. First, the argument is not timely raised. Stephens did not broach the subject until his reply brief; as a result, the State was given no opportunity to respond to this argument.

■ Secondly, we are not entirely convinced that our standard of review is at odds with the one enunciated by the Supreme Court. This court first formulated its standard of review in search-and-seizure cases in *State v. Osborn*, 263 Ark. 554, 566 S.W.2d 139 (1978):

> We have never stated our standard for appellate review of the trial court action granting or denying motions to suppress evidence obtained by means of a warrantless search. Although the substantial evidence rule has been followed by this court in nearly every instance of review of any fact finding by circuit judge, even on questions pertaining to admissibility of evidence, there has been at least one outstanding exception since our decision in *Harris v. State*, 244 Ark. 314, 425 S.W.2d 293, *cert. den.* 393 U.S. 941, 89 S.Ct. 308, 21 L.Ed.2d 278. We then decided that we would make an independent determination of the voluntariness of a confession as a basis for its admission into evidence, giving respectful consideration to the findings of the trial judge on the critical issue. This review was crystalized into a standard articulated in *Degler v. State*, 257 Ark. 388, 517 S.W.2d 515 and followed thereafter. *See*, e.g., *Smith v. State*, 259 Ark. 849, 537 S.W.2d 158. We have also extended it to at least one other situation pertaining to admissibility of evidence. *See Hammers v. State*, 261 Ark. 585, 550 S.W.2d 432.
>
> Pursuant to *Degler*, we make an independent determination based upon the totality of the circumstances, but will not set aside a trial judge's finding of voluntariness unless it is clearly against the preponderance of the evidence. In this approach, we have given considerable weight to the findings of the trial judge in the resolution of evidentiary conflicts. *Harris v. State*, supra. We must defer to the superior position of the trial judge to pass upon the credibility

of witnesses. *Whitmore v. State*, 263 Ark. 419, 565 S.W.2d 733 (1978).

*Osborn*, 263 Ark. at 557, 566 S.W.2d at 140.

■ Without additional argument and citation of authority, we are unable to say our standard is in conflict with that set out in *Ornelas*. The Supreme Court directed reviewing courts to examine the factual findings of trial courts "only for clear error" and give "due weight to inferences drawn from those facts by resident judges"; our standard, as set forth in *Osborn*, requires us to do the same.

■ Finally, we note that in reviewing the record before us, the outcome would be the same under the *Ornelas* standard or the one our court has adopted. In short, the trial judge who heard Stephens's motion to suppress made an appropriate factual finding that there was no pretext involved in Stephens's arrest. Based on that finding, the judge reached the correct legal conclusion to deny Stephens's motion to suppress. In other words, whether we applied our "independent determination based on the totality of the circumstances" and "clearly erroneous" standard of review or examined the record *de novo*, giving a clear error review of historical facts as described in *Ornelas*, we conclude that the trial court made the right decision. Simply put, Deputy Freeman arrested Stephens based on an outstanding arrest warrant, and he then conducted a lawful search incident to arrest. We hold the trial court's ruling to allow the evidence gained from the search of Stephens and his car was correct.

For the foregoing reasons, we affirm Stephens's convictions.

BROWN and SMITH, JJ., concur.

R OBERT L. BROWN, Justice, concurring. I agree with the majority opinion but write only to expand on one point. The majority opinion correctly cites *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994), for the following proposition:

> An ulterior motive does not in itself render an arrest pretextual when there is a valid overt reason to make the arrest. *Id.* (citing *Hines v. State*, 289 Ark. 50, 55, 709 S.W.2d 65, 68 (1986)). The reasoning is that the arrest for the overt violation would have taken

place in any event; thus there is no reason to bring the Fourth Amendment and the exclusionary doctrine into play. *Id.*

The *Mings* opinion, however, goes forward and emphasizes that an objective, reasonable-officer standard is applied in determining whether the arrest is valid and relies on Wayne R. LaFave's distinguished treatise as authority. *See* 1 Wayne R. LaFave, *Search and Seizure* § 1.4, at 22 (Supp. 1994). Thus, failure to meet the objective and reasonableness standard set out in *Mings* can undermine the validity of an arrest. We recently upheld a reasonableness standard for pretextual arrests in *State v. Sullivan*, 340 Ark. 315, 11 S.W.3d 526 (2000), *reh'g denied* 340 Ark. 318-A, 16 S.W.3d 551 (2000).

SMITH, J., joins.