Renice SMITH *v.* STATE of Arkansas

CR 78-196                                    576 S.W. 2d 957

Opinion delivered February 19, 1979
(Division II)

*James P. Massie,* for appellant.

*Steve Clark,* Atty. Gen., by: *Ray Hartenstein,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. The Pulaski County Circuit Court, sitting as a jury, found Renice Smith guilty of theft by receiving, and Smith, having been convicted of two previous felonies, was sentenced to five years in the penitentiary.

The only issue on appeal of this case is the validity of a search and seizure. The trial judge found the search lawful and admitted into evidence several items seized from Smith's residence, including a Magnavox color television set. We find on appeal the search was in violation of the Fourth Amendment of the United States Constitution and reverse the judgment of the trial court.

Two Little Rock policemen learned on November 23, 1976, that a Magnavox color television set that had been stolen in July, 1976, in a burglary, was pawned at the Square Deal Pawn Shop on November 19, 1976, by Renice Smith, and was taken out of pawn by Smith on November 20, 1976. The policemen had the serial number of the television taken in the burglary and it matched the number on the pawn ticket.

The officers routinely checked their outstanding warrants and found two hot check warrants outstanding on Smith. They proceeded to Smith's residence on November 24, 1976, at 7:30 a.m. and took with them the hot check warrants and a burglary report which listed items, including the Magnavox television set, taken in the burglary.

According to the officers' testimony, and theirs is uncommonly identical, they knocked on Smith's door and he came to the door in a state of undress. They arrested him for the hot check charges and he invited them in so he could get dressed and accompany them downtown. They asked if they could look around, and seeing a Magnavox television set, they compared the serial numbers and found it the same as the stolen one; other items reportedly stolen in the same burglary, including golf clubs, tennis rackets and a radio were also observed in the residence and listed on the burglary report, but there were no serial numbers available. A closet was searched and some clothes were seized. The officers thought, but were not certain, that the closet door was open.

Both officers insisted that Smith invited them in and they asked for permission to search the premises which was granted.

Smith's story is somewhat different. He said he went to the door and one officer flashed a warrant, told him he wanted to talk to him about some hot checks, and when the officer wanted to come in, he simply stepped aside. The officer turned around and left, came back with another officer and they informed him he was under arrest for the hot check charges and was told he was going downtown. He proceeded to get dressed and one officer talked to him while he was dressing and the other officer searched the place including all the rooms, under the bed and dresser drawers.

Smith said he never granted, nor was he asked to grant, consent to search. He was simply placed under arrest and they came in his residence.

Later, at the police station, Smith said they asked for written consent to search his residence and he declined.

The officers deny that they went to Smith's residence to search for the items taken in the burglary. They said they had no probable cause for a warrant and, therefore, they did not obtain one.

The police officers' protestations that they had no intention of searching Smith's residence belies the facts; their first interest in this matter was when they learned that Smith had pawned and redeemed a stolen television set. It was then they went to their files and found warrants outstanding for hot checks. They took with them a list of the stolen items that were taken in a particular burglary and that list included the television set in question. Smith was placed under arrest before they entered his residence, was in their custody at the time they gained entry.

There are two conceivable grounds on which the search could have been valid.

First, there is the doctrine authorizing a seizure of con-

traband in "plain view." These items were clearly in plain view once the officers were inside the residence. Items seized in plain view of an officer are lawfully seized if entry or the initial intrusion was lawful; if discovery of the object was inadvertent; and, if the incriminating nature of the object was immediately apparent. *U.S. v. Johnson,* 541 F. 2d 1311 (8th Cir. 1976).

It was admitted that none of the items appear to be incriminating by their nature; they were stock items available to consumers throughout commerce. Certainly there was no inadvertent discovery. The initial intrusion could only be lawful if consent was given.

Then, the only lawful basis for this search would be on the second ground, consent.

The State, as it should, bears a heavy burden to prove that a warrantless search is voluntary. *King v. State,* 262 Ark. 342, 557 S.W. 2d 386 (1977). That burden is to prove by clear and positive testimony that that consent was freely and voluntarily given. *Rodriquez v. State,* 262 Ark. 659, 559 S.W. 2d 925 (1978).

> . . . And where the defendant is under arrest, as here, that burden is particularly heavy. . . . .

> . . . "This burden on the Government is particularly heavy in cases where the individual is under arrest. Nonresistance to the orders or suggestions of the police is not infrequent in such a situation; true consent, free of fear or pressure, is not so readily to be found. (citations omitted)."

*U.S. v. Kowal,* 197 F. Supp. 401 (D.R.I. 1961).

We have simply the testimony of the parties and the circumstances of the case. On appeal, we make an independent determination considering the totality of the circumstances to see if the State has met its burden. We find in this case that the trial court's decision was clearly erroneous. *Pollard v. State,* 264 Ark. 753, 574 S.W. 2d 656 (1978).

Smith was under arrest and in custody of the officers at the time it was alleged that consent was given. Under such circumstances genuinely voluntary consent must be clearly shown. There is no doubt that one of the purposes, if not the purpose, of going to Smith's residence was to look for the stolen items. This is the reason the officers became interested in the case. They said they did not obtain a warrant because there was no probable cause. We would disagree with this assessment based on the record before us.

In conclusion we find that this search and seizure was unlawful in violation of the Fourth Amendment of the United States Constitution and the judgment of the trial court in that regard is reversed and the cause is remanded.

Reversed and remanded.

We agree. HARRIS, C.J., and FOGLEMAN and HOLT, JJ.