Ronnie BREWER *v.* STATE of Arkansas

CR 80-130                                          611 S.W. 2d 179
Supreme Court of Arkansas
Opinion delivered February 2, 1981
[Rehearing denied March 2, 1981.]

*E. Alvin Schay*, State Appellate Defender, by: *Ray Hartenstein*, Chief Deputy Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant and two others were jointly charged with capital murder, Ark. Stat. Ann. § 41-1501 (Repl. 1977), and aggravated robbery, Ark. Stat. Ann. §§ 41-2102 and 41-2103 (Repl. 1977). A severance was granted. A jury acquitted him of the murder charge but convicted him on the alleged robbery charge and imposed a five year sentence. Appellant challenges the introduction of his in-custody statement and contends without it the evidence was insufficient to support the verdict; therefore, the cause should be dismissed. We affirm.

On December 14, 1978, at approximately 7 a.m., Morris Lillard was shot and killed at his general store and post office at Charlotte, Arkansas, and his cash register stolen. Appellant was arrested that evening for a prior unrelated burglary. Following a *Miranda* warning, he was interrogated at 3:20 a.m. the next day on the murder and robbery offenses, at which time he gave a non-incriminating statement as to his activities on the 14th. He received a visit later that day from his girl friend at her request. She told him she had made a statement implicating herself and him. Shortly thereafter, being again advised of his constitutional rights, he gave a second statement in which he admitted transporting his twin brother Donald and David Weaver to Charlotte around 6 a.m. on the 14th with the knowledge they were armed and going to rob Lillard. Also, he had taken them there the previous day for the same purpose, but the two were thwarted due to the number of people in the store. After the alleged robbery and murder, appellant and his girl friend disposed of the murder weapon.

Appellant first moved to suppress the statement on the grounds of involuntariness due to duress, enticement, mis-

representations and encouragement. This motion was denied after a hearing. Appellant filed an amended motion to suppress on the grounds the statement was obtained at a time when appellant was illegally incarcerated and as a pretext for questioning. This motion was also denied. The officers involved in the arrest and questioning testified at these hearings that appellant was initially arrested on a burglary charge. An officer had received information from an informant, whom he had successfully used before, that appellant was a "good suspect" for the burglary of a local grocery store several weeks earlier. Another officer understood that the informant buttressed his knowledge by stating he had heard the appellant talking about committing the burglary. The latter was refuted by the officer who was the recipient of the information. The officer, who made the decision to bring appellant in, admitted appellant was arrested because he thought appellant might also be involved in the Lillard case. He was one of several suspects, and the investigation had focused on him as a prime suspect. It was established that appellant had not, as yet, been charged with the burglary of the store, nor was he ever questioned concerning that incident. The only record of the arrest, the log book at the jail, showed appellant had been arrested for capital felony murder. The court ruled there were two arrests, the initial one being for the burglary and the second for murder and aggravated robbery after evidence came to light that appellant was connected with this offense.

Appellant contends the statement was obtained as the result of an illegal arrest and incarceration in violation of the Fourth Amendment and was inadmissible evidence, because the officers lacked probable cause to arrest him for the burglary or the murder. He argues the arrest was merely a pretext to provide an opportunity to question him, and the statement taken while he was illegally incarcerated was an exploitation of that arrest. He cites *Brown* v. *Illinois*, 422 U.S. 590 (1975), and *Dunaway* v. *New York*, 442 U.S. 200 (1979), in which that court held statements there should have been excluded as fruits of illegal arrests when there were insufficient intervening circumstances "attenuating the taint of arrest."

Ark. Rules of Criminal Procedure, Rule 4.1 (Repl. 1977)

provides:

>a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed (i) a felony; . . . (d) A warrantless arrest by an officer not personally possessed of information sufficient to constitute reasonable cause is valid where the arresting officer is instructed to make the arrest by a police agency which collectively possesses knowledge sufficient to constitute reasonable cause.

In *Sanders* v. *State*, 259 Ark. 329, 532 S.W.2d 752 (1976), we said:

>. . . [P]robable cause is only a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that the accused committed a felony, but not tantamount to the quantum of proof required to support a conviction . . . The existence of probable cause depends upon the facts and circumstances of which the arresting officer has knowledge at the moment of the arrest . . .

>Determination of probable cause is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act . . .

>. . . Constitutional standards permit common sense, honest judgments by police officers in their probable cause determinations.

There we also recognized that, on appeal, "all presumptions are favorable to the trial court's ruling on the legality of the arrest, and the burden of demonstrating error rests upon appellant." When we view the totality of the facts here from the standpoint of common sense and with a pragmatic approach, the evidence is sufficient to constitute probable cause for appellant's initial arrest.

Even though it be said that his initial arrest was illegal, as contended, we think there was a sufficient intervening cir-

cumstance which attenuated any taint of that arrest. As discussed previously, the appellant's first statement was exculpatory and non-incriminating. Subsequently, a significant intervening act occurred; i.e., appellant's girl friend, at her request, was permitted to see him. She reported to him she had told the officers about their involvement in the alleged offense, after being led to believe he had admitted his complicity. He responded that he had not. However, shortly thereafter, he decided to give the incriminating statement that is now claimed to be inadmissible because it is tainted by his asserted illegal arrest and incarceration.

In *Sanders* v. *State, supra*, we said:

... The United States Supreme Court did not hold that the taint of the illegal arrest, followed by the giving of the Miranda warnings, reached any and every such statement made by the arrested person regardless of the circumstances. Rather, that court stated that it is entirely possible that persons arrested illegally frequently may decide to confess as an act of free will unaffected by the initial illegality, that the question of voluntariness must be answered in each case upon the particular facts of the case ...

Surely, *Brown* v. *Illinois, supra*, and *Dunaway* v. *New York, supra* do not require that, in these circumstances, that evidence is inadmissible after appellant was twice acquainted with his Miranda rights and had had considerable time, approximately 24 hours, for reflection and deliberation as to any statement he should make.

We next consider appellant's argument that without the confession there was insufficient evidence to corroborate the testimony of Weaver, an accomplice, who detailed appellant's complicity before and after the alleged offense. He correctly cites the rule that one cannot be convicted of a felony upon the testimony of an accomplice unless it is corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark. Stat. Ann. § 43-2116 (Repl. 1977). Section 41-303 provides, *inter alia*, that one is an accomplice to the commission of an offense if, for the purpose

of facilitating it, he aids another person in planning or committing it. When we consider appellant's confession, which we hold voluntary, together with his testimony at trial where he admitted the truthfulness of his confession, except having knowledge of the criminal purposer of his codefendants, we find no merit in appellant's argument there was insufficient corroboration of his accomplice's testimony. *Olles & Anderson v. State*, 260 Ark. 571, 542 S.W. 2d 755 (1976).

Affirmed.