German Dario Gutierrez GUZMAN
*v.* STATE of Arkansas

CR 84-11                                                672 S.W.2d 656

Supreme Court of Arkansas
Opinion delivered July 2, 1984
[Rehearing denied July 16, 1984.]

*Larry D. Vaught,* for appellant.

*Steve Clark,* Atty. Gen., by: *Marci L. Talbot,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. The trial court overruled appellant's motion to suppress evidence he alleged was obtained in violation of his Fourth Amendment rights. He was found guilty of possession of a controlled substance with intent to deliver and was sentenced to a term of forty years imprisonment. For reversal appellant argues: 1) evidence received and admitted was obtained in violation of his rights under the Fourth Amendment to the Constitution of the United States; 2) the sentence is excessive under the circumstances of this case; and 3) the court erred in failing to admonish the jury regarding inflammatory statements by the prosecutor in closing argument. We hold that the trial court erred in admitting evidence which should have been suppressed.

Sometime prior to appellant's arrest on June 13, 1983, the Arkansas State Police and The Federal Drug Enforcement Administration had appellant's home in Batesville, Arkansas, under surveillance because it was suspected he was dealing in cocaine. Observation and photographs produced probable cause neither for a search of appellant's residence nor for his arrest. About 7:30 p.m. on June 13, 1983, Agent Jim Stepp with the DEA requested Sgt. J. R. Howard of the Arkansas State Police to go to appellant's

residence to determine if there were any illegal aliens there. Another state trooper and two deputy sheriffs joined Howard en route to appellant's home. Upon arrival the three occupants of the house where appellant resided were outside in the yard. Appellant's brother was in the front yard and appellant and his mother were in the back yard. Sgt. Howard encountered the brother in the front yard and other officers encountered appellant and his mother in the back yard. Although the parties at the house stated there were no more people in the house, they nevertheless consented to the officers' entry of the house to look for other illegal aliens. Appellant's mother and brother were determined to be in this country illegally and were turned over to the Border Patrol which was contacted after appellant's arrest.

While the officers were in the house searching for aliens Sgt. Howard observed a set of num-chuks near a bedroom door. Stating the num-chuks were illegal weapons the officers then requested to search the house for other illegal weapons or contraband. None of the residents of the house could read or write English. Sgt. Howard then wrote out a consent to search and obtained appellant's signature. The consent stated: "I, German Guzman, voluntarily give Sgt. J. R. Howard, Arkansas State Police, and Trooper Carroll Seaton, Arkansas State Police, permission to search my residence at 2240 Byers Street in Batesville, Arkansas." After obtaining the written consent the officers searched the premises. In a bedroom closet they found an open box which contained a set of small scales. The scales could be used to weigh cocaine but were not manufactured for that purpose. The scales could be used for weighing gunpowder or any similar substance. A white powder was found in the cup on the scales which is used for weighing powder and other material. The officers decided the white powder was cocaine. The parties were arrested and allowed to change clothes. In the process, appellant was seen trying to conceal several packets of cocaine which weighed in the aggregate 4.5 grams.

On the date of appellant's arrest there were several arrests of other Columbian nationals by the DEA in Little Rock as part of an ongoing investigation relating to cocaine

sales. Sgt. Howard's *report of appellant's arrest stated he had gone to the house to* "investigate possibility of illegal aliens having possession of narcotics."

If the consent to search appellant's home was given voluntarily the evidence obtained by the search is admissible. However, if it was not voluntarily given the evidence should be suppressed. It is undisputed that appellant's home had been observed and photographed as a part of a much larger investigation concerning Columbian nationals dealing in cocaine. No probable cause existed for appellant's arrest nor for a search of his home. His arrest occurred on the same day other Columbian nationals in Arkansas were arrested on drug charges. Sgt. Howard's report stated he went to appellant's home to investigate the possibility of aliens having possession of narcotics. It is clear that if the purpose of the officers' visit to the appellant's home was to discover illegal aliens, such purpose ended well before the num-chuks were found. There is no evidence the num-chuks were illegal weapons.

The Fourth Amendment to the United States Constitution was to prohibit the dreaded general searches which had existed prior to the adoption of the Bill of Rights in 1791. *United States* v. *Lefkowitz*, 285 U.S. 452 (1932). In *Lefkowitz* it was held that an arrest may not be used as a pretext to search for evidence. There has been a tendency by the various courts, including the United States Supreme Court, to relax the exclusionary rule. However, there is no indication by any court that the rule as it relates to searches of homes is being relaxed. The United States Supreme Court held in *Welsh* v. *Wisconsin*, ___ U.S. ___ , 104 S.Ct. 2091 (1984) that the Fourth Amendment prevents warrantless arrests in the home unless there is probable cause and exigent circumstances. In quoting from *Payton* v. *New York*, 445 U.S. 573 (1980) the *Welsh* Court said:

It is not surprising, therefore, that the court has recognized, as "a 'basic principle of Fourth Amendment law [,]' that searches and seizures inside a home without a warrant are presumptively unreasonable."

"A search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show . . . the presence of 'exigent circumstances'." *Welsh, supra; Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971).

The Fourth Amendment guarantee against general searches applies to the guilty as well as the innocent. At the time of a search the suspect is presumed innocent. To decide the issue of reasonableness after the fact would render the Amendment meaningless. The right of privacy is one of the fundamental values of our civilization. It can neither be treated lightly nor trod upon. If the Fourth Amendment is to protect the fundamental right of the people in America to remain secure in their homes there must be sanctions against the violation of this sacred right. The sanction applied for violation of this right is the suppression of evidence illegally obtained. Absent exigent circumstances the Fourth Amendment interposes a judicial officer between citizens and the police. Exigent circumstances must be compelling to override the rights of the people. This is not done to protect criminals or to allow houses to be used for illegal purposes. This restraint is imposed in order that an objective mind is utilized to weigh the reasons before one's home is invaded by uninvited police. A man's home is still his castle. The right to this protection is too valuable to entrust to those who are charged with the duty of apprehending criminals and whose duties also require them to locate evidence to prove the guilt of suspects. In *McDonald* v. *United States,* 335 U.S. 451 (1948), the Court stated:

> Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that Constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.

The Fourth and Fourteenth Amendments require that consent to search a home cannot be coerced, explicitly or implicitly, or by threats whether implied or overt. A warrantless search of a home may be the least obnoxious or objectionable thing to some but it is generally illegal and uncontitutional. Most unlawful practices commence with slight intrusions which are usually silent and unnoticed at first but subsequently depreciate constitutional rights in a much more devastating form. *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973); *Boyd* v. *United States*, 116 U.S. 616 (1886). In *Schneckloth* the Court explained the problem of reconciling the divergent interests relating to the Fourth Amendment. In considering the voluntariness of a consent to search the Court considered the totality of the circumstances when it stated:

> In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents. Those searches that are the product of police coercion can thus be filtered out without undermining the continuing validity of consent searches. In sum, there is no reason for us to depart in the area of consent searches, from the traditional definition of "voluntariness."

This court has been no less diligent than the United States Supreme Court in protecting the Constitutional rights of the citizens. We have held that consent to a warrantless search of one's home must be given freely and voluntarily. *Smith* v. *State*, 265 Ark. 104, 576 S.W.2d 957 (1979); *King* v. *State*, 262 Ark. 342, 557 S.W.2d 386 (1977). Our position on this issue was stated in *Smith, supra,* as follows:

> The State, as it should, bears a heavy burden to prove that a warrantless search is voluntary . . . That burden is to prove by clear and positive testimony that [the] consent was freely and voluntarily given . . . On appeal, we made an independent determination considering the totality of the circumstances to see if the State has

met its burden.

We held that the search of Smith's home was illegal because he was arrested under pretext. The officers arrested Smith on a hot check charge but while waiting for him to dress they obtained his consent to search and almost immediately located stolen property which was the real object of their search in the first place. In the present case appellant had been under suspicion as a participant of Columbian nationals who were dealing in cocaine in Arkansas. His home had been under surveillance for several weeks but no cause for a warrant had been found. In fact it is admitted there existed no probable cause to issue a warrant at the time Sgt. Howard and three other officers were dipatched to see if illegal aliens were present at appellant's residence. Howard's report reflects that he went there to investigate the possibility of "illegal aliens having possession of narcotics." Upon arrival the officers found all three occupants of appellant's home were in the yard. They were informed by the three persons that there were no other people in the house. Still the officer obtained permission to search the house for "other aliens." Finding no other "aliens" the officers did observe a set of num-chuks in one of the bedrooms and informed appellant they wanted permission to search for other illegal weapons. It is disputed as to whether the officers informed appellant they wanted to look for drugs also. Having no consent forms the officers wrote out a general search form as follows: "I, German Guzman, voluntarily give Sgt. J.R. Howard, Arkansas State Police, and Trooper Carroll Seaton, Arkansas State Police, permission to search my residence at 2240 Byers Street in Batesville, Arkansas." The consent which appellant signed had no restrictions. They located a small box in a bedroom closet containing a pair of scales which could be used for weighing cocaine. The scales could also be used to weigh gunpowder or aspirin or thouands of other items which are lawful and legal. None of the Guzman family could read or write English. They conferred in Spanish in the presence of the four officers and came to the conclusion that appellant had no choice but to sign the consent to search.

The burden was upon the state to prove by clear and

120

positive testimony that consent for the search of appellant's home was freely and voluntarily given. When the defendant is in custody the burden on the state is particularly heavy. Consent free and clear of fear or coercion under the circumstances of this case does not occur frequently. Considering the totality of the circumstances we cannot find that exigent circumstances and probable cause existed. Therefore, we must hold that the items seized as a result of the illegal search should have been and must be suppressed.

Reversed and remanded.