STATE of Arkansas *v.* Kenneth Andrew SULLIVAN

CR 99-1140                                            74 S.W.3d 215

Supreme Court of Arkansas
Opinion delivered May 16, 2002
[Petition for rehearing denied June 20, 2002*]

---

* GLAZE and IMBER, JJ., would grant.

648

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., and *Brad Newman*, Ass't Att'y Gen., for appellant.

*John Wesley Hall, Jr.*, and *Kathy L. Hall; David M. Siegel;* and *F.N. "Buddy" Troxell*, for appellee.

ROBERT L. BROWN, Justice. This is a pretextual-arrest case. Kenneth Andrew Sullivan was arrested in 1998 in Conway. He was' charged with, among other offenses, possession of methamphetamine with intent to deliver. The facts leading up to his arrest were set out in *State v. Sullivan*, 340 Ark. 315, 11 S.W.3d 526 (2000) (*Sullivan I*). Sullivan moved to suppress the fruits of the arrest, including the methamphetamine, and the trial court granted his motion. We again are called upon to review the propriety of the trial court's decision. We affirm that decision on state law grounds.

The procedural history of this case follows. In *Sullivan I*, we affirmed the trial court's decision to suppress on the basis that the arresting officer's actions were pretextual. In the original briefing of the issues, neither party cited *Whren v. United States*, 517 U.S. 806 (1996), to this court. After our decision in *Sullivan I*, the State petitioned for rehearing, arguing that we did not follow the Supreme Court's decision in *Whren*. We denied the petition but issued a supplemental opinion addressing the *Whren* case. *See State v. Sullivan*, 340 Ark. 318-A, 16 S.W.3d 551 (2000) (Supplemental Opinion on Denial of Rehearing) (*Sullivan II*). In *Sullivan II*, we rejected the rationale of *Whren* and stated that we were free to grant Sullivan more protection under the United States Constitution than the federal courts have seen fit to provide.

After our decision in *Sullivan II*, the State petitioned the Supreme Court for a writ of *certiorari*. The Supreme Court granted the petition. In *Arkansas v. Sullivan*, 532 U.S. 769 (2001) (*per curiam*), the Supreme Court reversed our decision in *Sullivan II*. The Court noted that we could grant Sullivan more protection under state law, but that we could not do so under the federal constitution. The Court said:

> The Arkansas Supreme Court's alternative holding, that it may interpret the United States Constitution to provide greater protection than this Court's own federal constitutional precedents provide, is foreclosed by *Oregon v. Hass*, 420 U.S. 714, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975). There, we observed that the Oregon Supreme Court's statement that it could "'interpret the Fourth Amendment more restrictively than interpreted by the United States Supreme Court'" was "not the law and surely must

be inadvertent error." *Id.*, at 719, n. 4, 95 S. Ct. 1215. We reiterated in *Hass* that while "a State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards," it "may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them." *Id.*, at 719, 95 S. Ct. 1215.

*Arkansas v. Sullivan*, 532 U.S. at 772 (emphasis in original). The United States Supreme Court remanded the case to us for further proceedings. Following the remand, we granted Sullivan's motion to rebrief the issues in this case. We now take up the State's appeal of the trial court's suppression decision for the third time.

Initially, we note that under federal law there is no longer a pretext inquiry. In *Whren v. United States, supra,* the United States Supreme Court foreclosed such inquiries into a police officer's subjective motivation, holding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren,* 517 U.S. at 813. So long as a police officer's actions are objectively reasonable, there is no Fourth Amendment violation even if the police officer's actions are wholly pretextual. Under *Whren,* for example, a law enforcement officer may use any violation of traffic laws to investigate an entirely unrelated criminal offense, regardless of whether the officer has probable cause or even reasonable suspicion that the unrelated offense has been committed. Under the Fourth Amendment, this is acceptable police conduct. Further, the *Whren* Court took pains to point out that the opinion did not announce a departure from its prior interpretations of the Fourth Amendment, citing *United States v. Robinson,* 414 U.S. 218 (1973), *Gustafson v. Florida,* 414 U.S. 260 (1973), *Scott v. United States,* 436 U.S. 128 (1978), and *United States v. Villamonte-Marquez,* 462 U.S. 579 (1983).

In various search-and-seizure contexts, this court has viewed the protections of Article 2, section 15, of the Arkansas Constitution to be parallel to those provided by the Fourth Amendment. *See, e.g., Mullinax v. State,* 327 Ark. 41, 938 S.W.2d 801 (1997) (noting the "virtually identical" wording of the two constitutional provisions at issue); *Stout v. State,* 320 Ark. 552, 898 S.W.2d 457 (1995). In *Stout,* for example, we said:

> Of course, we could hold that the Arkansas Constitution provides greater protection against unreasonable searches than does the Constitution of the United States, but we see no reason to do so. The wording of each document is comparable, and through the years, in construing this part of the Arkansas Constitution, we have followed the Supreme Court cases. . . . [W]e choose to continue to interpret "unreasonable search" in Article 2, Section 15 of the Constitution of Arkansas in the same manner the Supreme Court interprets the Fourth Amendment to the Constitution of the United States.

*Stout*, 320 Ark. at 557-58, 898 S.W.2d at 460. In *Stout*, we declined to depart from federal interpretation in the vehicular search-incident-to-arrest context, noting particularly that we had followed the United States Supreme Court's lead in this area: "*Belton* has provided a practical and workable rule for fourteen years, and we have followed it on many occasions." *Id*.

■ Nonetheless, in other search-and-seizure contexts, we have not been in lock-step with federal Fourth Amendment interpretation. This fact is illustrated by our recent decision in *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002). In *Griffin*, we relied on the Arkansas Constitution in declaring a nighttime incursion upon the defendant's curtilage to be an illegal exercise of law enforcement authority. In *Griffin*, we said:

> [W]hile we lack authority to extend the protections of the Fourth Amendment beyond the holdings of the United States Supreme Court, we do have the authority to impose greater restrictions on police activities in our state based upon our own state law than those the Supreme Court holds to be necessary based upon federal constitutional standards.

*Griffin*, 347 Ark. at 792, 67 S.W.3d at 584 (citing *Arkansas v. Sullivan, supra*). After setting forth the historical underpinnings of our decision, we held that Article 2, section 15, of the Arkansas Constitution prohibited the police conduct at issue in that case. The *Griffin* decision was in keeping with our Rule of Criminal Procedure 13.2(c), which forbids nighttime execution of a search warrant except in limited circumstances. Rule 13.2(c) is another instance in which this court has granted more protection under Arkansas law than the federal courts provide in interpreting the

Fourth Amendment. In sum, there are occasions and contexts in which federal Fourth Amendment interpretation provides adequate protections against unreasonable law enforcement conduct; however, there are also occasions when this court will provide more protection under the Arkansas Constitution than that provided by the federal courts.

One pivotal inquiry in this regard, as highlighted by *Stout, supra*, is whether this court has traditionally viewed an issue differently than the federal courts. *See also State v. Gunwall*, 720 P.2d 808, 814-15 (Wash. 1986) (noting that Washington State's "common law history" is one of several factors which may warrant a departure from Fourth Amendment standards). This case presents such a situation. Hence, we begin our analysis of the specific issue presented by this case by noting that this court has traditionally treated pretextual arrests differently than have the federal courts. Unlike the United States Supreme Court, this court has considered pretextual arrests to be unreasonable for over twenty years.[1] Our first case expressing that view was *Smith v. State*, 265 Ark. 104, 576 S.W.2d 957 (1979). In *Smith*, officers suspected the defendant of possessing stolen goods, but their suspicions did not rise to the level of probable cause. Thus, they located two entirely unrelated arrest warrants for the defendant and proceeded to use them to get into his home. Once inside, they searched for the stolen merchandise. We held in *Smith* that this was unreasonable police conduct and suppressed the fruits of the search.

In *Brewer v. State*, 271 Ark. 810, 611 S.W.2d 179 (1981), we again indicated that pretext was an issue that concerned this court. In *Brewer*, law enforcement officers arrested the defendant for participating in a burglary with the intention to question him about an unrelated homicide. They obtained an incriminating statement from the defendant regarding the homicide and charged him with that homicide, but never charged him with the burglary. The

---

[1] Our cases have not equated pretextual stops with pretextual arrests due to the different level of police intrusion involved with a traffic stop as opposed to a full custodial arrest. The intrusiveness of an arrest warrants inquiry into an officer's subjective intentions. *See, e.g., Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001); *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994).

defendant challenged the admissibility of the pretextually obtained statement. We held that the statement was admissible, but only because the taint of the illegal pretextual arrest dissipated when the defendant's girlfriend told the defendant that she had implicated him in the homicide. We made it clear in *Brewer* that we would have excluded the pretextually obtained statement had the taint not dissipated.

The next case in which pretext was a determinative issue was *Richardson v. State*, 288 Ark. 407, 706 S.W.2d 363 (1986). In *Richardson*, police officers brought the defendant in for questioning after his uncle's remains had been discovered in the charred ruins of his burned home. While at the police station, the defendant was surreptitiously drinking from a whiskey bottle hidden in his boot. After the defendant became obviously drunk, officers arrested him for public intoxication. On the basis of this arrest, they seized the defendant's clothing and sent it to the state crime laboratory for analysis. The defendant's uncle's blood was discovered on his clothing. We reversed the defendant's murder conviction based on the pretextual motives of the officers as well as various violations of the Arkansas Rules of Criminal Procedure:

> Regardless of whether we can technically justify the arrest on the charge of public intoxication, we can find no justification whatever for these rules violations. The appellant was clearly being held because he was suspected in the murder and arson case. The officers had a duty to charge him with that offense or let him go. Their failure to do so put them in violation of the rules mentioned and the realization of those violations makes it even clearer that the arrest which occurred was carried out as a pretext to permit the search.

*Richardson*, 288 Ark. at 414, 706 S.W.2d at 367.

█   Shortly thereafter, we decided another pretextual-arrest case, *Hines v. State*, 289 Ark. 50, 709 S.W.2d 65 (1986). In *Hines*, law enforcement officers had connected the defendant's name with a murder. However, they did not have probable cause to arrest him for the murder, and they did not pursue him as a suspect. Almost three months later, the defendant's mother-in-law complained to the local prosecuting attorney that the defendant and two others tried to kill her by pouring formaldehyde on her

furniture. Police officers thereafter spent five days investigating the mother-in-law's claim and, after her repeated requests for action on the case, they procured arrest warrants for all three individuals involved in the formaldehyde incident. The first of the three to be arrested incriminated the defendant in the murder, and the defendant thereafter voluntarily appeared at the police·station and confessed to the murder. In addressing the defendant's claim that his statement should have been suppressed on the basis of pretext, we said:

> Claims of pretextual arrest raise a unique problem in the law— deciding whether an ulterior motive prompted an arrest which otherwise would not have occurred. Confusion can be avoided by applying a "but for" approach, that is, would the arrest not have occurred but for the other, typically the more serious, crime. Where the police have a dual motive in making an arrest, what might be termed the covert motive is not tainted by the overt motive, even though the covert motive may be dominant, so long as the arrest would have been carried out had the covert motive been absent.

*Hines*, 289 Ark. at 55, 709 S.W.2d at 68. Applying the newly articulated but-for test, we held that the defendant would have been arrested for the formaldehyde incident in any event, and we affirmed his conviction for murder.

We followed the *Hines* but-for test in *Ray v. State*, 304 Ark. 489, 803 S.W.2d 894 (1991). There, the defendant was a suspect in the murder of his ex-wife's lover. Officers developed the defendant as a suspect early in the investigation due to several factors. One factor was an outstanding warrant for the defendant's arrest for the terroristic threatening of his ex-wife. Another was the identification of a shirt left at the scene of the crime as the defendant's shirt. On the basis of this information, a police officer went to the defendant's house. He observed the defendant get into his car and pull onto the road, at which time he pulled the defendant over. Smelling alcohol on his breath, he arrested the defendant and drove him to the police station. On appeal, the defendant claimed that the evidence seized and statements taken should have been suppressed due to pretext. We disagreed, noting that given the evidence against him in the homicide investigation,

he could not show that he would not have been arrested but for the pretext. In other words, there was probable cause to arrest him for the homicide, which obviated the need for a pretext analysis.

We have noted our concern with pretextual police conduct in a number of other decisions. *See Stephens v. State*, 342 Ark. 151, 28 S.W.3d 260 (2000) (finding no pretextual arrest where officers approached defendant with an outstanding arrest warrant) (citing *Ray, supra*; *Hines, supra*); *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993) (finding no pretextual arrest where defendant was suspected in a homicide but was picked up on an unrelated outstanding arrest warrant); *State v. Shepherd*, 303 Ark. 447, 454, 798 S.W.2d 45, 49 (1990) (finding pretextual conduct, based on "the law of Arkansas," where five police officers entered and searched defendant's property with the ostensible purpose of serving a prosecutor's subpoena); *Thomas v. State*, 303 Ark. 210, 795 S.W.2d 917 (1990) (finding no pretextual search incident to arrest where defendant was stopped for speeding, but arrested because an NCIC search revealed that a person with defendant's name was wanted in Texas for escape); *Guzman v. State*, 283 Ark. 112, 672 S.W.2d 656 (1984) (finding pretextual police conduct where police entered defendant's property with the stated purpose of searching for illegal aliens, when in fact they were searching for drugs).

■ As for the basis for our pretextual-arrest decisions, the State points out that some of the cases cited federal precedent. Sullivan likewise points out that others relied solely on state rules and case law. Both parties are correct. What is important to note in this regard is that this line of cases developed in our court despite the Supreme Court's decisions in *Gustafson, Robinson, Scott*, and *Villamonte-Marquez, supra*. While the United States Supreme Court was tilting in one direction in its pretext analysis — culminating finally in the plain statement of their position in *Whren* — we consistently took a different direction. Today, we solidify our position, based on the adequate and independent state grounds of Article 2, section 15, of the Arkansas Constitution, as well as our own pretext decisions. Under these authorities, pretextual arrests — arrests that would not have occurred *but for* an ulte-

rior investigative motive — are unreasonable police conduct warranting application of the exclusionary rule. The pretext inquiry is a threshold matter to be resolved before inquiring into other bases for suppression such as, for example, compliance with Ark. R. Crim. P. 4.1, which governs warrantless arrests.

Bearing these principles in mind, we now turn to the analysis of the present case. The arresting officer in this case was a narcotics officer. He admitted at the suppression hearing that he recognized Sullivan's name as one involved in narcotics in the area. He had no probable cause, however, to arrest him for any drug violation. The police officer instead performed a full custodial arrest of Sullivan and stated that the reasons for the arrest were speeding, illegal window-tinting, driving an unsafe vehicle, failure to produce registration and insurance, and possession of a "weapon": a roofing hatchet that had been on the defendant's floorboard for so long that it was rusting and corroding into the carpet. The trial court was bothered by the fact that the police officer arrested Sullivan rather than citing him for traffic violations and that the police officer used the roofing hatchet to bolster the case. We repeat the trial court's findings that resulted in the suppression of the methamphetamine:

> [F]ollowing our hearing yesterday, I have gone over the testimony and looked at what I believe to be the law in that case, and it's going to be my decision in this particular instance that based on the testimony, specifically that the officer testified that he stopped the car based on a charge of suspicion of speeding — which I have no problem with the stop. I think that was . . . there was radar. I don't have any problem with that.
>
> He testified that once he got him stopped, he recognized him as someone that he had seen intelligence on regarding narcotics, and he — rather than write citations, he physically arrested him. And the weapons charge, I think, was added to that. And I don't believe that in this particular instance that the — that that was appropriate, and I'm going to grant the defendant's motion to suppress the evidence seized as a result of that search.

■ The crucial question in this case becomes this: Would the arresting officer have effected the full custodial arrest but for

his suspicion that Sullivan was involved in narcotics? The trial court answered this question in the negative, finding that the arrest was pretextual. The trial court suppressed the fruits of the arrest on that basis. We cannot say that the court's findings and its decision were clearly against the preponderance of the evidence. *See also Sullivan I*, 340 Ark. at 318, 11 S.W.3d at 528; *Sullivan II*, 16 S.W.3d at 552.

■ Additionally, we observe that Sullivan urges this court to depart from the United States Supreme Court's holding in *Atwater v. Lago Vista*, 532 U.S. 318 (2001). In *Atwater*, the Court held that a full custodial arrest was a permissible law enforcement response to a fine-only traffic offense. In that case, it was failure of a driver to wear a seat belt that resulted in the full custodial arrest. The Court declined to draw a line between types of offenses for which a person may be arrested and booked, and those that warrant only a fine. While the holding in *Atwater* raises potential concerns, this is not the appropriate case in which to address those concerns. In this case, Sullivan was arrested for several offenses, one of which was an illegal window-tint, which is a violation of Ark. Code Ann. § 27-37-306(b)(1) (Repl. 1994). That offense is not a fine-only offense, but rather, as a Class B misdemeanor, is punishable with up to 90 days' imprisonment. *See* Ark. Code Ann. § 5-4-401(b)(2) (Repl. 1997). Thus, contrary to the United States Supreme Court's observation in *Arkansas v. Sullivan*, 532 U.S. at 771, this case does not involve an arrest for a fine-only traffic offense, and thus it does not present a compelling case for departure from *Atwater*.

In closing, we note an observation made in a concurring opinion in *Griffin v. State*:

> In the majority opinion, we now depart from our earlier decisions wherein this court has declared that the Arkansas Constitution provides no greater protection than the Fourth Amendment to the United States Constitution. We previously noted that the wording of each document is comparable, and through the years, in construing this part of the Arkansas Constitution, we have followed the United States Supreme Court's cases. Current inter-

> pretation of the United States Constitution in the federal courts no longer mirrors our interpretation of our own constitution.

*Griffin*, 347 Ark. at 804, 67 S.W.3d at 593 (HANNAH, J., concurring). This is another instance in which we depart from the standards established by the federal courts and rely instead on independent state grounds to determine what, in Arkansas, constitutes unreasonable police conduct warranting suppression.

Affirmed.

GLAZE and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. I dissent. The majority opinion claims that this court has traditionally treated pretextual arrests differently than have federal courts. However, the cases cited in the majority opinion do not support this contention. The questions of pretext in a majority of these cases were in fact analyzed under the Fourth Amendment and federal law, not under Arkansas law. *See Smith v. State*, 265 Ark. 104, 576 S.W.2d 957 (1979); *Brewer v. State*, 271 Ark. 810, 611 S.W.2d 179 (1981); *Richardson v. State*, 288 Ark. 407, 706 S.W.2d 363 (1986); and *Thomas v. State*, 303 Ark. 210, 795 S.W.2d 917 (1990). In *Hines v. State*, 289 Ark. 50, 709 S.W.2d 65 (1986), as the majority notes, the court adopted a "but for" approach in evaluating claims of pretextual arrest; however, the majority fails to note that this approach was taken from a mixture of federal law and the Professor LaFave treatise, *Criminal Procedure*, not from Arkansas law or historical precedent. *Ray v. State*, 304 Ark. 489, 803 S.W.2d 894 (1991), did follow the "but for" approach, but in 1993 the court decided *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993), without using the "but for" approach, and instead cited to *Richardson v. State, supra*, a holding under federal analysis, for its precedent.

The majority opinion ignores the more recent holdings by this court regarding pretextual arrest. In *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994), this court implicitly overruled *Hines, supra*, and the "but for" approach by applying an objective test used by the Eighth Circuit. The court stated "that an otherwise valid stop does not become unreasonable merely because the

officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." *Mings, supra,* (quoting *United States v. Cummins,* 920 F.2d 498, 501 (8th Cir. 1990)). This standard was applied in the last case before this court on pretextual arrest prior to this appeal on remand. *See Stephens v. State,* 342 Ark. 151, 28 S.W.3d 260 (2000).

The majority claims that the line of cases described above is proof that this court's pretextual analysis developed in a different direction than that of the Supreme Court. The majority points out that in *Whren v. United States,* 517 U.S. 806 (1996), Justice Scalia stated that the Court had decided on several previous occasions that an officer's motive does not invalidate objectively reasonable behavior under the Fourth Amendment. However, it is clear, and the majority opinion acknowledges this, that the Court did not directly address the issue of pretextual stops and arrests until *Whren.* Therefore, the Arkansas cases were not contrary to federal law until the holding in the instant case.

The majority further points out that Arkansas is not in "lockstep" with federal Fourth Amendment interpretation in other search and seizure contexts, specifically in the case of *Griffin v. State,* 347 Ark. 788, 67 S.W.3d 582 (2002). However, *Griffin* is distinguishable from the instant case in two fundamental aspects. First, the Supreme Court has not decided a "knock and talk" case, whereas *Whren* is a clear statement on pretextual stop and arrest. Second, this court and the Supreme Court have held that people have a lesser expectation of privacy in their vehicles than in their homes. *See Cardwell v. Lewis,* 417 U.S. 583 (1974); and *Tackett v. State,* 307 Ark. 520, 822 S.W.2d 834 (1992).

The majority opinion does not address that the holding in this case will overrule strong precedent that this court interprets Ark. Const. art. 2, § 15 in the same manner the Supreme Court interprets the Fourth Amendment to the Constitution of the United States. *See Rainey v. Hartness,* 339 Ark. 293, 5 S.W.3d 410 (1999); *Fultz v. State,* 333 Ark. 586, 972 S.W.2d 146 (1998); *Mullinax v. State,* 327 Ark. 41, 938 S.W.2d 801 (1997); and *Stout v. State,* 320 Ark. 522, 898 S.W.2d 457 (1995). There is a strong

presumption that the court's prior decisions are valid. *See Ray v. State*, 342 Ark. 180, 27 S.W.3d 384 (2000).

Further, the 'majority opinion does not address the fundamental facts of the case. Mr. Sullivan was stopped for speeding and having an illegal tint on his windshield, two violations that he does not deny. Both of the violations occurred in front of a police officer, thus triggering Ark. R. Crim. P. 4.1(a)(iii), "A law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed . . . (iii) any violation of law in the officer's presence." There is nothing in the law that requires the officer to fine, rather than arrest, Mr. Sullivan. The contraband was discovered in a vehicle search pursuant to Ark. R. Crim. P. 12.6(b), and the search was completed following the Conway Police Department's Vehicle Inventory Policy. The stop, the arrest, and the search were all valid. To hold otherwise creates a constitutional challenge in every case where Rule 4.1(a)(iii) is used by an officer to make a warrantless arrest.

In summary, the trial court should be reversed for three reasons. First, Arkansas follows the Supreme Court's interpretation on search and seizure issues. Second, the current Arkansas law on this matter is the *Mings* objective standard. Third, there was a valid reason for the stop and for the arrest; therefore, the officer's motivation is irrelevant under both *Whren* and *Mings*.

IMBER, J., joins this dissent.