Judy HART *v.* STATE of Arkansas

CR 06-412

244 S.W.3d 670

Supreme Court of Arkansas
Opinion delivered December 7, 2006

*Barry D. Neal*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Appellant Judy Ann Hart entered a negotiated guilty plea to possession of methamphetamine with intent to deliver and to possession of drug paraphernalia, both convictions arising from her arrest on June 6, 2005. She was sentenced to fifteen years' imprisonment by the Sebastian County Circuit Court. In accordance with Ark. R. Crim. P. 24.3(b), Hart's plea was conditional; therefore, she reserved the right to appeal from the judgment by challenging the circuit court's denial of her motion to suppress evidence. For reversal, Hart argues that the circuit court erred (1) in finding that police did not need to comply with the knock and announce requirement, and (2) in finding that exclusion of the evidence is the proper remedy. We find no error and affirm. This case is an appeal involving the interpretation of the Arkansas Constitution; our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1).

*Facts*

Hart's home was searched on June 6, 2005, pursuant to a warrant. She was arrested and released on bond on June 8, 2005. A second search warrant was issued and her home was again searched on July 12, 2005, resulting in her arrest for additional drug violations. While the Judgment and Commitment Order in the record reflects convictions for offenses committed on both dates, only the search and convictions arising from events on June 6, 2005, are at issue on this appeal.

Prior to June 6, Officer Tracy Powell obtained information about Hart from a confidential informant. In her affidavit offered in support of the request for the warrant, Powell stated that the confidential informant had been used in the past leading to seven felony drug arrests. Powell additionally stated that police had previously checked information provided by this confidential informant and found it to be true and correct.

The confidential informant told Powell that he had been in Hart's home within the previous twenty-four hours, and that Hart showed him a white powdery substance she represented to be

methamphetamine. He also saw electronic scales and large sums of money. He further told Powell that Hart informed him that she was in the business of providing methamphetamine in exchange for property or money. The search warrant was issued based on this affidavit.

Prior to the search, police photographed Hart's home and determined that there were video cameras providing observation of the area outside the residence. At least one camera was pointed toward the door, and the surveillance allowed observation of persons coming to the home. Police had no knowledge of whether the video cameras were functioning or whether there were monitors inside the house. Although photographs of the residence revealed the cameras, the officers executing the search warrant were not told of the cameras prior to executing the warrant.

The warrant was executed at about 4:25 p.m. The windows and doors to the house were blocked so that one could not see in the house. According to Powell, the officers parked their vehicles a couple of houses down, approached the door as quickly as possible, knocked, and said "Police, search warrant." When police arrived at the door, it was closed, but unlocked.

Officer Wayne Barnett testified that he and the other officers arrived, parked about a half a block away, and they started to the house in a "really quick jog." Barnett testified that he saw the camera as he hit the front door stating:

> As soon as I got there I yelled 'Camera,' and one of the other detectives reached over and started to grab it. About that time, or at the same time the door was opened, we had knocked and yelled, 'Police, search warrant,' the camera was coming down and pretty much simultaneous with that the door was unlocked. So, we just went inside.

According to Barnett, when they saw the camera, police felt like they had been compromised.

Further, according to Barnett, about two or three seconds passed between the announcement and entry. Officer Eric Williams testified that the time between announcement and entry was "from a few seconds or so. We were compromised due to the camera." He was concerned that the occupants could be preparing for the police entry or disposing of evidence.

Hart's daughter Jamie Beck testified that, "[t]hey said, 'Fort Smith Police,' and then they knocked three times. They said, 'we have got a warrant,' and they came in immediately." According to

a timing experiment performed in court, Beck determined that from announce to entry was almost the same time. Beck testified that there was not enough time to respond to the announcement. According to her, no one in the house stood up before police entered.

## Motion to Suppress

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances. *Dickinson v. State*, 367 Ark. 102, 238 S.W.3d 125 (2006). This court reverses only if the circuit court's ruling denying a motion to suppress is clearly against the preponderance of the evidence. *Id.*

Hart argues that the search violated both the Fourth Amendment to the United States Constitution and the Arkansas Constitution. While Hart listed art. 2, § 15 of the Arkansas Constitution in her motion to suppress, and again in her brief on appeal, art. 2 § 15 is not mentioned in the circuit court's ruling. Failure to obtain a ruling precludes appellate review. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006).

The analysis in this case is based on the Fourth Amendment. The circuit court ruled that the time passing between the knock and entry was not sufficient. However, the circuit court then agreed with the State that under the facts of this case, police had the authority to enter without an adequate knock and announce. The circuit court relied on *Tate v. State*, 357 Ark. 369, 167 S.W.3d 655 (2004), and based its decision on the presence of the video camera. This was found to constitute exigent circumstances justifying a no-knock entry.

To justify a no-knock entry, under the Fourth Amendment, "police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). Further, the reasonableness of the decision to enter without knocking and announcing must be evaluated as of the time that police enter the home. *Id.* at 395; *see also Ilo v. State*, 350 Ark. 138, 85 S.W.3d 542 (2002). For this reason, the analysis is not dependent upon whether a magistrate granted a no-knock warrant. *Id.*

In *Tate, supra,* the appellant argued that the only item offered supporting the search warrant was a video camera mounted on the outside of the residence. However, this court noted additional information, including information from a reliable informant who provided detailed information on the drug business occurring at the residence. There was also other evidence of drug activity at the residence. *See also State v. Carlino,* 861 A.2d 849 (N.J. Super. Ct. App. Div. 2004) (warrant based on totality of evidence that included surveillance equipment); *Flores v. State,* 177 S.W.3d 8 (Tex. Crim. App. 2005) (same).

In analyzing whether a no-knock entry was permissible, this court considers the totality of the circumstances. *Dickinson, supra.* Where the analysis reveals exigent circumstances, the requirement of knock and announce may be excused. *Id.* As we begin our analysis of the totality of the circumstances in this case, we note first that the general rule is that the law on search and seizure must be construed in favor of the person who is the subject of the search or seizure. *State v. Broadway,* 269 Ark. 215, 599 S.W.2d 721 (1980).

Further on the issue of exigent circumstances, we stated in *Guzman v. State,* 283 Ark. 112, 117, 672 S.W.2d 656, 659 (1984), that

> [e]xigent circumstances must be compelling to override the rights of the people. This is not done to protect criminals or to allow houses to be used for illegal purposes. This restraint is imposed in order that an objective mind is utilized to weigh the reasons before one's home is invaded by uninvited police. A man's home is still his castle. The right to this protection is too valuable to entrust to those who are charged with the duty of apprehending criminals and whose duties also require them to locate evidence to prove the guilt of suspects.

The facts of this case are that police obtained information through a reliable informant that Hart was in the business of selling methamphetamine. The evidence from the informant was that he recently saw significant amounts of powdered substance that Hart claimed was methamphetamine. She told him that she was selling it, and he saw a scale and large sums of money. Based on that information, Powell sought and obtained a search warrant. Upon arrival, police discovered that a video camera was present that appeared to allow occupants of the home to view the front door and approaches to the house. According to Barnett, upon seeing

the camera, he felt immediate concern for his safety and the safety of the other officers. Officer Williams expressed concern about the occupants disposing of evidence. Given placement of the camera to allow observation of avenues of access to the home, along with the knowledge that a drug operation was occurring within the home, the blocked windows and door of the home, as well as the condition and location of the home, police were justified in feeling concern for their safety and the disposal of evidence.

The State argues that the mere presence of the video camera constituted an exigent circumstance allowing the no-knock entry. A blanket holding that the presence of a video camera always provides an exigent circumstance to allow a no-knock entry would be overbroad. Such a holding ignores our duty to examine the totality of the circumstances on a case-by-case basis. Careful judicial review is justified in search and seizure cases to assure that the exigencies of the situation made it imperative that police break and enter a home against the will and knowledge of the occupant.

■ Under the totality of the circumstances in this case, we cannot say that the circuit court's decision was clearly against the preponderance of the evidence. Because we hold that the no-knock entry was legal, we need not address Hart's second point regarding whether exclusion of the evidence is the proper remedy where police violate the knock-and-announce rule.

Affirmed.