We observe that, in the State's brief, the State offers three alternative reasons to affirm the legality of the search. However, we disagree with each of these arguments.
The State first argues that the search of the wallet was legal because Mr. Shay consented to the search. Arkansas Rule of Criminal Procedure 11.1 provides, in relevant part:
(a) An officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search.
(b) The state has the burden of proving by clear and positive evidence that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion.
The State posits that nothing in the video/audio recording or in the testimony suggests that appellant's consent was not freely or voluntarily given or that the search of his wallet exceeded the scope of the consent given.
We cannot agree, under the circumstances presented, that Mr. Shay consented to the search or to the officer's opening of his wallet such to justify the search of the wallet under Rule 11.1. A careful review of the officer's video/audio recording is instrumental. After the officer ordered Mr. Shay out of the car, the officer told Mr. Shay not to reach in his pockets and ordered him to put his hands up. The officer then announced a "safety check" and began to pat Mr. Shay down. Clearly, at this point, Mr. Shay had not consented to being searched and was complying with the officer's commands under duress. During the pat down, the officer discovered the wallet and asked, "What's that right there?" Mr. Shay never spoke during the search. It is evident from the context of the recording and from the officer's testimony that the officer took the wallet, looked inside, found Mr. Shay's identification card, and removed the card, which revealed the methamphetamine underneath.
There was no evidence that Mr. Shay expressly invited the officer to look through his wallet, nor can we infer a voluntary consent to search from the totality of the circumstances. The officer testified that it was only after he had detected the wallet during the weapons pat-down that Mr. Shay handed it to him. However, the trial court did not specifically find that Mr. Shay handed the wallet to the officer, but rather found that "I assume when he pulled it out it was for the officer to have it" and "so he voluntarily gave him the evidence." Upon review by this court, the video/audio recording does not confirm that Mr. Shay removed his wallet from his pocket or handed the wallet to the officer. The video was taken from a body-cam on the officer and is trained on the upper body and face of Mr. Shay, but the video does not cover the specific area around Mr. Shay's pockets. The recording shows that while Mr. Shay had his hands away from his pockets as ordered by the police, the wallet was discovered and the officer *891 exclaimed, "What's that right there," obviously referring to the wallet. Therefore, we disagree with the trial court's finding that Mr. Shay voluntary gave the officer the evidence. Nevertheless, even assuming that Mr. Shay removed his wallet at this point of the search, as found by the trial court, we cannot agree that this amounted to his voluntary implied consent to search the wallet. Upon discovery of the wallet, the recording confirms that the officer asked Mr. Shay, "What's that right there?"; so even if Mr. Shay removed his wallet from his pocket at that point, he was doing so at the officer's direction. Moreover, the act of taking a wallet from his pocket at the direction of a police officer is insufficient to infer from a totality of the circumstances that Mr. Shay voluntarily consented to the search.
Under Rule 11.1(b), it is the State's burden to prove by clear and positive evidence that consent to the search was freely and voluntarily given and was free from actual or implied duress or coercion. We hold that the State did not meet its burden of voluntary consent because there was no evidence that Mr. Shay actually consented to the officer searching him, the wallet was removed from Mr. Shay's pocket only after it was detected by the officer in the involuntary frisk, and there was no testimony or inference that Mr. Shay gave the officer permission to open his wallet and search the contents.
The State next argues that when Officer Kennedy discovered the wallet in the pat-down search he had probable cause to believe the wallet contained something subject to seizure under Arkansas Rule of Criminal Procedure 14.1, which pertains to vehicle searches and provides in relevant part:
(a) An officer who has reasonable cause to believe that a moving or readily movable vehicle is or contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and may seize things subject to seizure discovered in the course of the search where the vehicle is:
(i) on a public way or waters or other area open to the public[.]
....
(b) If the officer does not find the things subject to seizure by his search of the vehicle, and if:
(i) the things subject to seizure are of such a size and nature that they could be concealed on the person; and
(ii) the officer has reason to suspect that one (1) or more of the occupants of the vehicle may have the things subject to seizure so concealed; the officer may search the suspected occupants[.]
In arguing that officer Kennedy had probable cause to search the wallet under Rule 14.1, the State points to Officer Kennedy's testimony that "sometimes males carry a small amount of drugs in their wallet." The State further notes that Mr. Shay had previously denied having any identification on him.
In assessing whether Officer Kennedy had probable cause to search for contraband under Rule 14.1, we must examine the differences between reasonable suspicion and probable cause. Reasonable suspicion is defined as "a suspicion based on facts or circumstances which of themselves do not give rise to justify a lawful arrest, but give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1. Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected."
*892 Laime v. State , 347 Ark. 142, 153, 60 S.W.3d 464, 472 (2001). The same standards govern reasonable (that is to say, probable) cause determinations, whether the question is the validity of an arrest or the validity of a search and seizure. Hudson v. State , 316 Ark. 360, 872 S.W.2d 68 (1994).
In the present case, although we have determined the officer had reasonable suspicion to search Mr. Shay for weapons to ensure his safety, we conclude that there was no probable cause to search Mr. Shay's vehicle for contraband under Rule 14.1 or probable cause to believe that Mr. Shay's wallet contained illegal drugs. Nor did the trial court find that any such probable cause existed. Although Officer Kennedy testified that males sometimes carry drugs in their wallets, this supposition was insufficient to rise to the level of probable cause to believe that Mr. Shay's wallet contained drugs. And while the State suggests that Officer Kennedy was also checking Mr. Shay's wallet for identification, the testimony showed that Mr. Shay had already been positively identified by Officer Kennedy, and at any rate an identification card is not subject to seizure. For these reasons, we do not agree with the State's claim that the officer had the authority to search more extensively than was necessary to ensure the officer's safety.
Finally, the State argues that the search of appellant's person and wallet was legal because Mr. Shay was violating a city ordinance by being present in the park after closing time. The State claims that Mr. Shay could have been arrested for violation of the ordinance, and thus that the search was authorized by Arkansas Rule of Criminal Procedure 12.1, which provides:
An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused for the following purposes only:
(a) to protect the officer, the accused, or others;
(b) to prevent the escape of the accused;
(c) to furnish appropriate custodial care if the accused is jailed; or
(d) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.
Rule 4.1(a)(iii) provides that a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe the person has committed any violation of law in the officer's presence.
We do not agree that the officer's search of the appellant in this case can be legitimized based on a violation of a city ordinance. During the State's direct examination of Officer Kennedy, wherein Officer Kennedy explained his reasons for searching Mr.
Shay, Officer Kennedy did not mention anything about Mr. Shay violating a city ordinance. Nor did the trial court base its decision to deny Mr. Shay's suppression motion on any ordinance. On cross-examination, Officer Kennedy stated that being in the park after hours violated an unspecified city ordinance, but he did not arrest or even cite either of the occupants for any such violation. In fact, Officer Kennedy stated that the female passenger, who was also in the park after hours, was free to go at any time.
The primary case relied on by the State in making this argument is State v. Earl , 333 Ark. 489, 970 S.W.2d 789 (1998). In that case, a police officer stopped the appellant's truck for running a stop sign, and during the stop the officer searched the truck and found drugs. Although the officer *893 did not arrest the appellant for running the stop sign, the supreme court nonetheless upheld the legality of the search pursuant to Arkansas Rule of Criminal Procedure 5.5, which provided:
The issuance of a citation in lieu of arrest or continued custody does not affect the authority of a law enforcement officer to conduct an otherwise lawful search or any other investigative procedure incident to an arrest.
The supreme court held that where an officer has probable cause to arrest pursuant to Rule 4.1, he may validly conduct a search incident to arrest of either the person or the area within his immediate control under Rule 5.5. The supreme court stated that simply because a police officer's decision is to issue a citation in lieu of a custodial arrest, that does not affect the officer's right to conduct a search of the same scope as a search incident to arrest, as a citation is equivalent to custodial arrest for authority-to-search purposes under Rule 5.5.
We conclude that this case is distinguishable from Earl , supra , in that not only did Officer Kennedy not arrest anyone for violation of a city ordinance, he gave no indication that he ever even considered issuing a citation. Moreover, Rule 5.5, upon which the search was validated in Earl , was repealed in 1999. The repeal of the rule was in response to the United States Supreme Court's decision in Knowles v. Iowa , 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). In Knowles , the Supreme Court held that the search of a vehicle, with neither the driver's consent nor probable cause to conduct the search, by a police officer who stops the driver for speeding and issues a citation rather than arresting the driver, as authorized by an Iowa statute that was the equivalent to our Rule 5.5 , violated the United States Constitution's Fourth Amendment. The Supreme Court in Knowles declared the Iowa statute unconstitutional, and Arkansas' Rule 5.5 was repealed soon thereafter and no longer exists.
Finally, we find guidance from our supreme court's holding in State v. Sullivan , 348 Ark. 647, 74 S.W.3d 215 (2002). In Sullivan , the supreme court held that pretextual arrests, i.e., arrests that would not have occurred but for an ulterior investigative motive, are unreasonable police conduct warranting the application of the exclusionary rule under article 2, section 15 of the Arkansas Constitution. In Sullivan , the police officer arrested the appellant for speeding, illegal window tinting, driving an unsafe vehicle, failure to produce registration and insurance, and possession of a roofing hatchet. But because the officer's arrest was pretextual and would not have been effected but for the officer's suspicion that the appellant was involved in narcotics, the Sullivan court suppressed the fruits of the search incident to the pretextual arrest and accompanying search.
In the present case, we do not agree with the State's position that because Mr. Shay could have been arrested for violating a city ordinance, the search of his person was authorized. Even assuming that Mr. Shay could have been arrested for violating some ordinance, Officer Kennedy made no such arrest. Because a pretextual arrest is unreasonable police conduct giving rise to the suppression of evidence, as our supreme court squarely held in Sullivan , we cannot uphold a search made incident to no arrest at all.
For these reasons, we hold that the trial court erred in denying appellant's motion to suppress the contraband. Therefore, we reverse and remand.
Reversed and remanded.
Gruber, C.J., and Virden, Gladwin, and Harrison, JJ., agree.
Glover, J., dissents.